PLITT *v.* STEVAN, Trustee

[No. 231, September Term, 1959.]

*Decided July 18, 1960.*

The cause was argued before BRUNE, C. J., and HENDER-SON, HAMMOND, PRESCOTT and HORNEY, JJ.

*Eugene Hettleman,* with whom was *Benjamin Swogell* on the brief, for appellant.

*Mitchell Stevan,* with whom was *Louis J. Sagner* on the brief, for appellee.

HENDERSON, J., delivered the opinion of the Court.

Kool Vent Aluminum Awning Corporation, on March 3, 1958, executed a chattel mortgage to the appellant to secure payment of $10,000 on or before April 2, 1958. Plitt, the lender, made affidavit before a notary public that the consideration of $10,000 set forth in the mortgage was true and *bona fide.* Plitt drew a check for that sum to Kool Vent, which was immediately endorsed by Dorfman, the President, and handed to the attorney for the Company, Schimmel, who cashed it. On March 4, 1958, the chattel mortgage was duly recorded. On the same date Schimmel deposited $6,000 in his personal bank account, and on March 8, gave Plitt his check for $5,000. He testified that he disbursed the remaining $5,000 to or for the account of Kool Vent. Default having occurred in the payment of the balance due Plitt, he filed a petition to foreclose on July 15, 1958. On August 15, 1958, Kool Vent executed a deed of trust for the benefit of its creditors, and on the same date the equity court passed an order assuming jurisdiction of the administration of the trust, authorizing the trustee for creditors to sell the corporate assets and reserving to Plitt all rights he might have in the proceeds.

This order was assented to by the trustee named in the mortgage.

Thereafter, Plitt filed a petition for the allowance of his lien claim for $2,322.99, representing the unpaid balance of the mortgage debt. After hearing testimony, the Chancellor disallowed the claim on the ground that the mortgage was invalid because the consideration sworn to was not the true consideration.

Dorfman testified that he approached Plitt for a loan of $5,000, the company being in financial straits. Plitt demanded a $750 bonus, and insisted that he sign a note and mortgage for $10,000. Plitt gave him a check for $10,000, which he endorsed and delivered to Schimmel, the company's attorney. He "understood" that Schimmel cashed the check and paid Plitt $5,000 in four or five days. Plitt asked that it be done that way. He did not know whether Plitt ever received the bonus. The note and mortgage were executed in Schimmel's office, and Plitt gave him the check for $10,000 at that time. Kool Vent never received any benefit from the $5,000 repaid to Plitt.

Plitt testified that Kool Vent had the use of the entire $10,000 for five days. There was never any understanding as to when the $5,000 was to be repaid. He was to receive $10,750 if "it was carried as long as thirty days." He never received the $750. There were other payments on account of principal, the last being on April 18, 1958. The lien claim included an item for interest of $60.79, but did not include the bonus.

Schimmel testified that arrangements for the loan were made by Dorfman and Plitt. He cashed Plitt's check, endorsed by Dorfman, and deposited $6,000 in his account. He gave Plitt his check for $5,000 on March 8, in accordance with "the instructions he received from Mr. Plitt at the time he handed him the check" for $10,000, when the parties met in his office. The rest of the money he subsequently disbursed for the account of Kool Vent.

The Chancellor found as a fact that there was "a loan of only $5,000," and that "[t]he obvious reason for attempting to make the consideration appear to be $10,000 was the fact

that interest charged was $750 for one month, and by treating this as interest on $10,000 instead of $5,000, the rate might not appear to be too outrageous, although far beyond the legal limit." We cannot hold that the Chancellor was clearly wrong in his finding of fact. The appellant argues that Kool Vent, or its agent, had the use of the full $10,000 for four or five days, and hence the affidavit was literally true. But Kool Vent never had dominion over the fund. Plitt's check was immediately endorsed and handed to Schimmel, upon condition that $5,000 be returned to Plitt. Schimmel, acting for both parties and upon their joint instructions, was in the nature of an escrow agent, and the consideration was not *bona fide,* but colorable and inflated. The evidence supports the conclusion that the true consideration was $5,000, and not $10,000. Code (1957), Art. 21, sec. 50, states that "[n]o * * * mortgage of personal property shall be valid, except as between the parties, unless the * * * mortgagee * * * shall make an affidavit that the consideration * * * is true and *bona fide* as therein set forth * * *." A similar provision as to mortgages of real property is found in Code (1957), Art. 21, sec. 30.

The appellant strongly relies upon the cases of *Smith v. Myers,* 41 Md. 425, and *Govane Bldg. Co. v. Sun Mtge. Co.,* 156 Md. 401. In the *Smith* case, this Court found that an affidavit was not false, where the amount loaned was $5,000, as recited, but the lender retained $600 as a bonus or discount. The Court found that the mortgage was not fraudulent, and that the consideration sworn to represented an indebtedness which the mortgagor in good faith acknowledged and intended to repay. In the *Govane* case, this Court found, again in the absence of fraud, that the fact that the recited consideration of $5,000 included sums actually advanced by Moss, although the named mortgagee was Isekoff, the agent of Moss, did not render the mortgage invalid. We think both cases are distinguishable on their facts. The transaction in the instant case falls into the pattern of *Kline v. Inland Rubber Corp.,* 194 Md. 122, and *Groh v. Cohen,* 158 Md. 638, where affidavits were held to be illusory and fictitious, and hence ineffective. The considerations there stated "purported to be

loans * * *, when in truth no such loans were ever made or contemplated." The same observation applies to the additional $5,000 involved in the instant case. Cf. *Sickinger v. Zimel*, 77 A. 2d 905 (N. J.) (1951), quite similar on the facts, but based upon a somewhat different statutory provision. See also Note, 45 A. L. R. 2d 629.

The appellant contends, however, that the trustee in the instant case had no standing to object to the lien claimed by the appellant, because the record shows that the trustee filed a written consent to the passage of an order directing him to pay the lien claim. The trustee states in his brief that this consent was executed before the facts as to the consideration stated became known to him. Technically, perhaps, the trustee should have withdrawn his consent when he became aware of the facts. But the Chancellor stated in his opinion that "[t]his lien was contested by the trustee and hearings were held thereon." It is clear that the Chancellor treated the consent as withdrawn in open court, although not formally entered of record, and we think there was no waiver under the circumstances. The appellant contends, however, that even if invalid as to third persons, the mortgage is valid as to the mortgagor and those claiming under him, including the trustee, assignee.

It is the duty of a trustee in an assignment for the benefit of creditors to "resist and defeat all claims founded in fraud, and which would operate to the prejudice of *bona fide* creditors." *Mackintosh v. Corner*, 33 Md. 598, 607. Under some circumstances, at least, creditors are not bound by the assumption of jurisdiction by the equity court on an *ex parte* application. *National Park Bank v. Lanahan*, 60 Md. 477. It has been recognized that a trustee for creditors stands in the shoes of his assignor and takes the property subject to all the equities against the assignor. *Brown v. Deford & Co.*, 83 Md. 297, 310. Cf. *Phillips v. Pearson*, 27 Md. 242, 257. But it has also been held that a trustee represents the rights of subsequent creditors so far as to enable him to contest the claim of a mortgagee under defective mortgages to a preference in the distribution of the proceeds, and that such creditors are not necessary parties. *Sixth Ward Build. Ass'n v.*

*Willson,* 41 Md. 506. See also *Textor v. Orr,* 86 Md. 392, 399, distinguishing *Brown v. Deford & Co., supra.* See also *Jackson v. County Trust Co.,* 176 Md. 505, 509, and *Tatelbaum v. Nat'l Store, Etc., Co.,* 196 Md. 599, 605. Cf. *G. Ober & Sons Co. v. Keating,* 77 Md. 100.

The effect of the Chancellor's decree was to relegate the appellant to the status of an unsecured creditor. Under the authorities cited, this could only be correct as to claims of subsequent creditors. Pre-existing creditors, who became such without reference to or reliance upon the recording statute, could not take advantage of the failure to comply therewith, and we think the appeal brings up the correctness of the distribution of the fund in question. Yet the record contains no evidence, pro or con, on the question as to whether there were any creditors who became such subsequent to March 3, 1958. We think it appropriate to remand the case without affirmance or reversal, under Maryland Rule 871 a, for further proceedings not inconsistent with the views here expressed.

*Case remanded, without affirmance or reversal, for further proceedings, costs to be paid by the appellant.*