427 P.2d 527

Walter MacEWEN and Helen Thomson MacEwen, husband and wife, Appellants,

v.

Flay PETERSON, aka F. O. Peterson, and Blanche W. Peterson, husband and wife, Appellees.

No. 7972.

Supreme Court of Arizona.

In Banc.

May 10, 1967.

Rehearing Denied June 13, 1967.

Andrew L. Bettwy, Phoenix, for appellants.

Louis L. Wallace, Kingman, for appellees.

BERNSTEIN, Chief Justice.

This is an appeal from a judgment in a quiet title suit rendered by the Superior Court of Mohave County. In the absence of a transcript, the record is furnished us by statements of counsel for the appellants, MacEwen, and the appellees, Peterson as settled and approved by the judge of the Superior Court.[1] We also have before us the trial exhibits.

Flay Peterson and Blanche W. Peterson, appellees, brought suit against Walter MacEwen and Helen Thomson MacEwen, and Al Smith and Mary M. Smith to quiet title to the following described real estate in Mohave County:

"Section Thirty-Three (33) in *Township Twenty (20) North, Range Nineteen (19) West,* Gila and Salt River Base and Meridian, containing Six Hundred Forty (640) acres, more or less, and known as *Sacatone or Fig Springs Ranch.* (Emphasis Added)

The appellants MacEwen filed an answer to the complaint, and filed a cross complaint against Al Smith and Mary Smith. In the cross complaint the MacEwens asked that if judgment should be granted quieting the title in the Petersons the MacEwens then be given a judgment against the Smiths in an amount at least equal to the current real value of Section 33.

The Smiths stipulated that title be quieted as against them as they claimed no interest in Section 33 and filed their answer and an affirmative defense on the cross complaint. The trial court gave judgment to the Petersons on their complaint, and to the MacEwens on their cross complaint

against the Smiths "in the sum of $150.00, representing nominal damages." This appeal instituted by the MacEwens, is from the judgment rendered the Petersons on their complaint. No appeal has been taken from the judgment on the cross complaint, and the Smiths are not a party to this appeal.

■ The MacEwens contend that the trial court erred in finding a lost and unrecorded deed (Smith to Peterson) valid against subsequent purchasers for value without notice (Smith to MacEwen). If the MacEwens were subsequent purchasers for value without notice, then clearly the judgment must be reversed (see A.R.S. § 33–411); but if there is any reasonable evidence to justify the court's findings that the defendant purchased with notice, or was not a purchaser for value, the judgment must be affirmed, Davis v. Kleindienst, 64 Ariz. 251, 169 P.2d 78, 81. What does the record show?

The appellee, Flay Peterson in August 1941 together with his then partner, Al Smith purchased the above described real estate. On settlement of the partnership property in 1942 Smith deeded Section 33 to appellees. The deed was subsequently lost and unrecorded.

The appellants MacEwen on August 23, 1957, entered into an escrow agreement to purchase a large quantity of real estate from the Smiths, the same being described as follows:

"The property herein being sold is known as '*AL SMITH RANCH*' and the exact description will follow, said property is situated in the following *townships: 22N, 23N, 24N, 25N,* and the following ranges: 19W, 20W, 21W, and 22W, and the exact description is to be approved by the buyer, together with all improvements and water rights located thereon." (Emphasis added)

---

1. The record was never transcribed. James T. O'Day, court reporter, after being prepared by appellants and appellees departed the jurisdiction of Mohave County to places unknown. Due to the unusual circumstances, this court extended the time for filing transcript several times. Thereafter we further extended time to both appellant and appellee to file statements of the record under the provisions of 75(h) and 75(k) Rules of Civil Procedure for Superior Courts, 16 A.R.S.

The record shows that Peterson had been in continuous possession of Section 33 since 1942; that he was not aware until 1959 that the title of record showed Smith as still part owner; that he had cattle and sheep on the premises, and that he had the Taylor Grazing Permit in his name. Counsel for the defendants, the Smiths, testified on behalf of appellees, as did the Smiths. Smiths' attorney testified that he was at fault in preparing the 1957 Smith deed to MacEwen; that he inadvertently included this property while preparing other deeds to the transaction; that this property was not included in the escrow agreement of August 23, 1957 or subsequent amendments thereto; and that at the time Smith signed the deed he was in the hospital, very ill and not expected to live, and further that Smith did not read the deed.

Smith also testified that he did not read or recall signing the deed, that he never offered to sell this section to MacEwen, that it lay 12 to 15 miles from the closest part of the ranch, known as the "Al Smith Ranch", that he never listed Section 33 for sale and never showed MacEwen any land south of Highway 68.

A. J. Nullen testified that he was the realtor in the transaction and that Section 33 was not listed or included in the sale, and that it was 20 miles from the "Al Smith Ranch."

MacEwen himself on cross examination admitted that he paid no attention to Section 33 until 1959, and that he might not have been on Section 33 until after Peterson came to see him in 1959.

The MacEwens testified that they were bona fide purchasers for value without notice; that none of the land sold the MacEwens was specifically described in the escrow agreement; that the total patented acres was approximately 14,000, and the total property was in excess of 100,000 acres; that he included Section 33 in making his decision to buy by adding all the acreages of the lands described in the deeds held in escrow; that the consideration paid ran to the total acreage and not to specific parcels; and that there were other parcels that Al Smith failed to show him which were included in the purchase.

The Smith to MacEwen deed for Section 33 was dated October 12, 1957 but not recorded until January 30, 1959. All other deeds to the escrow transaction had been previously recorded.

■ The MacEwens argue that the trial court in awarding them nominal damages on their cross complaint against the Smiths thereby necessarily found them to be innocent purchasers for value without notice. The court found that the Smiths deeded to appellees in 1942 and that the deed was lost, and decreed that "the same is hereby reestablished and set up as a muniment of title as if said deed were now in existence and of record." The court further found that the deed from the Smiths to the appellants dated October 12, 1957 was "void as against the plaintiffs herein, and said deed is hereby, set aside and annulled, and declared of no force and effect." Thus, although no express finding was made by the court as to whether the appellants were purchasers for value without notice, such a finding is implicit in a holding reestablishing the lost unrecorded deed and voiding a subsequent recorded deed.

Incomplete as the record before us is, it yet appears to be replete with evidence that appellants were not bona fide purchasers. In addition to several of the facts set out above we note that the parties entered into an escrow agreement, naming Phoenix Title and Trust Company as their escrow agent. Appellants' Exhibit 1 appears to be the complete file of Phoenix Title, starting with the initial Escrow Instructions dated August 23, 1957 and running through to the subpoena duces tecum served upon Phoenix Title October 3, 1962. Nowhere therein do we find any specific reference to the property which is here involved. The description in the initial escrow agreement as set out above, clearly does not include Section 33, *Township 20 North,* Range 19 West, Gila and Salt River Base and Meridian.

Appellants' argument that Range 19 is a strip 6 miles wide running north to south through the entire State of Arizona is spurious. It is elemental that the congressional survey grid system describes the location of real property by relating it to both the township and range; and given only one, no property is described.

■ The escrow instructions call for issuance of title insurance to the buyers upon closing. An escrow amendment dated October 11, 1957 provides for refund of $15 per acre on any land found not to be insurable. Under this amendment $375 was actually refunded as to other property not here involved. We do not find that any title insurance was issued on Section 33 nor that any $15 per acre refund was made. A cursory title examination would have revealed that Smith held record title in common with appellee, Flay Peterson. All these facts indicate clearly that either Section 33 was not included in the escrow agreement or appellant was on notice of appellees' adverse interest in this property.

■■ If the property was not included then appellants took title as mere volunteers and are not entitled to protection as bona fide purchasers for value, Davis v. Kleindienst, supra. If the property was included then the appellants knew or should have known, through the escrow agent carrying out the terms of the escrow agreement of appellees' adverse interest. A person who fails to exercise due diligence to avail himself of information which is within his reach is not a bona fide purchaser. Davis v. Kleindienst, supra; University of Richmond v. Stone, 148 Va. 686, 139 S.E. 257; see also Shephard v. Van Doren, 40 N.M. 380, 60 P.2d 635. The record before us is sufficient and the evidence is ample to sustain the judgment rendered by the trial court.

■ So holding, we find it unnecessary to discuss other questions raised by appellants which challenge the reestablishment of the lost deed. Since the deed to MacEwen for Section 33 is void appellants are not a party in interest to the issue of restoring appellees' lost deed.

Judgment affirmed.

McFARLAND, V. C. J., and STRUCKMEYER, UDALL and LOCKWOOD, JJ., concur.