AMSTERDAM LUMBER, INC., a Montana Corporation, Plaintiff and Respondent, v. JAKE DYKSTERHOUSE et al., Defendants and Appellants.

No. 14025.
Submitted Sept. 15, 1978.
Decided Nov. 8, 1978.
586 P.2d 705.

134

Berg, Angel, Andriolo & Morgan, Gregory O. Morgan argued, Nash & Nash, Donald A. Nash argued, Bozeman, for defendants and appellants.

Landoe, Gary & Planalp, Joseph B. Gary argued, Brown, Pepper & Kommers, James M. Kommers argued, Health & Kirwan, Bozeman, James, Sogard & Fopp, Great Falls, for plaintiff and respondent.

MR. JUSTICE SHEEHY delivered the opinion of the Court.

On August 4, 1977, the District Court for the Eighteenth Judicial District, County of Gallatin, entered judgment of foreclosure on a mortgage in favor of Amsterdam Lumber, Inc. This foreclosure

was based on the default of defendant Jake Dyksterhouse to pay the indebtedness under a promissory note dated July 23, 1974 for the original sum of $22,083.00. On the date of judgment of foreclosure, principal and interest due was found to be $27,692.04, with interest accruing at the rate of $5.52 per day, and further, attorneys fees were awarded in the sum of $3, 500.00.

Specifically excepted from the judgment of foreclosure was another but prior indebtedness under a promissory noted dated April 17, 1973, in the original sum of $40,000.00, for which defendant Jake Dyksterhouse had executed a trust indenture to the First Montana Title Insurance Company, as trustee, and the Empire Federal Savings and Loan Association of Livingston, as beneficiary. The trust indenture described the same real property as the Amsterdam mortgage and was recorded June 6, 1973. The District Court found in its judgment of foreclosure that the trust indenture constituted a first lien upon the property and was not affected by the foreclosure proceedings of Amsterdam Lumber, Inc.

The court further ordered in its judgment that other defendants, being judgment creditors of Jake Dyksterhouse, had the following priorities with respect to any proceeds of foreclosure, after Amsterdam and the first lien right of Empire under the trust indenture:

| | | |
|---|---|---|
| Paul E. Elting | $1,250.00 | Dated September 25, 1975 |
| Martin Douma | 519.69 | Dated November 13, 1975 |
| Mountain Supply Company | 1,893.05 | Dated January 21, 1976 |
| Gallatin Valley Furniture Company | 1,855.75 | Dated April 8, 1976 |

Appellants are Paul E. Elting, Mountain Supply Company and Gallatin Valley Furniture Company. They dispute the findings and judgment of the District Court awarding Empire, as the trust indenture holder, a first lien over all of the parties, on the ground the trust indenture is in violation of the law and the public policy of the State of Montana. Appellants do not dispute the priority of the Amsterdam mortgage over their judgment liens.

The real property described in the recorded trust indenture is as follows:

"The NW ¼ NW ¼ NW ¼ of Section 36, Township 2 South, Range 5 East, M.P.M., EXCEPTING THEREFROM that portion of land within the right-of-way of the Gallatin Valley Electric Railway, and EXCEPTING THEREFROM that portion of land conveyed to the State of Montana for highway right-of-way."

It will be seen that the description of the real estate purports to convey 10 acres in the trust indenture, less whatever acreage is contained in the exceptions noted in the description. The undisputed testimony is that the tract in the trust indenture is 7.61 acres.

The use of a trust indenture of real property to secure an indebtedness is made possible in Montana under the Small Tract Financing Act of Montana, enacted in 1963. At the time of the trust indenture here, section 52-404, R.C.M.1947, within that act, provided:

"*Authorization of trust indentures.* Transfers in trust of any interest of real property of an area not exceeding three (3) acres may be made to secure the performance of an obligation of a grantor, or any other person named in the indenture, to a beneficiary; provided that it shall be unlawful to substitute a trust indenture for any mortgage in existence on the effective date of this act. Where any transfer in trust of any interest of real property is hereafter made to secure the performance of such an obligation, a power of sale is hereby conferred upon the trustee to be exercised after a breach of the obligation for which such transfer is security; and a trust indenture executed in conformity with this act may be foreclosed by advertisement and sale in the manner of the beneficiary, by judicial procedure as provided by law for the foreclosure of mortgages on real property. The power of sale may be exercised by the trustee without express provision therefor in the trust indenture."

(Section 52-404 was amended in 1974 so as to increase the area which could be transferred under a trust indenture from 3 acres to 15 acres.)

The court is aware that the popularity of the trust indenture sta-

tutory authorization is attested to by the fact that such instruments have largely supplanted mortgages in the financing of small tracts. The chief advantage to the borrower (grantor) in a trust indenture arrangement is that no deficiency judgment can be recovered against him upon foreclosure (section 52-414, R.C.M.1947). The chief advantage to the lender (beneficiary) is that upon default, the trustee's deed operates to convey to the purchaser from the trustee the title to the real property, without any right of redemption in the grantor (section 52-41(3), R.C.M.1947.

That recitation of the advantages to the parties to a trust indenture points up the difficulty facing the appellants in this case. The indebtedness under the trust indenture here is not in default. Amsterdam Lumber, Inc. has taken over the payments due under the trust indenture indebtedness. It appears the value of the property subject to the trust indenture may not be sufficient to cover all of the encumbrances and liens upon the property, including the trust indenture indebtedness, but is more than sufficient to cover the mortgage indebtedness of Amsterdam Lumber, Inc., and of the appellants, if the trust indenture in this case does not constitute an enforceable first lien as to the judgment creditors.

The public policy of this state with respect to trust indentures is declared in section 52-402, R.C.M.1947:

"Because the financing of homes and business expansion is essential to the development of the State of Montana, and because such financing, usually involving areas of real estate of not more than three (3) acres, has been restricted by the laws related to the mortgage of real property, and because more such financing of homes and business expansion is available if the parties can use security instruments and procedures not subject to all of the provisions of the mortgage laws, it is hereby declared to be the public policy of the State of Montana to permit the users of trust indentures for estates in real property of not more than three (3) acres, as hereinafter provided."

The trust indenture in this case violates the public policy of this state because the real estate covered by the trust indenture exceeds

the permitted 3 acres, there being an area of 7.61 acres involved here. Such being the case, we must now determine the effect of such illegality (section 13-801, R.C.M. 1947) on the parties here.

First we determine that the Empire instrument is not a statutory trust indenture. This position arises from the force of definitions contained within the Small Tract Financing Act. A "trust indenture" is defined as an indenture "executed in conformity with this act" conveying real property to a trustee in trust to secure the performance of an obligation of the grantor to a beneficiary. (Section 52-404(3), R.C.M. 1947). Moreover, the statute which authorizes such trust indentures, section 52-404, R.C.M. 1947, above quoted, authorizes transfers in trust of real property not exceeding 3 acres. Thus the purported trust indenture of Empire is not a trust indenture as defined by the act, nor is it a trust indenture authorized by the act. The conclusion is inescapable therefore that the instrument is not a statutory trust indenture contemplated by Montana Law.

If not a statutory trust indenture, what kind of a legal animal is it? Respondent suggests several alternatives: that it is at least a mortgage, or failing that a common law deed of trust, or failing that an equitable mortgage.

Respondent's argument that the instrument is at least a mortgage arises out of the provisions of section 52-417, R.C.M. 1947. There it is provided that "a trust indenture is deemed to be a mortgage on real property and is subject to all laws relating to mortgage on real property except to the extent that such laws are inconsistent" with the act. In construing section 52-417, however, we must meet up again with the definition of "trust indenture", that such an instrument must be an indenture "executed in conformity with this act". If we accorded the Empire instrument the status of a mortgage, we would be according an illegal instrument the same status as a legal instrument under the act. This could not have been the intent of the legislature which in declaring its public policy, stated that the acreage of a legal trust indenture could not exceed 3 acres. Therefore we conclude the Empire instrument is not to be accorded the

status of a mortgage because the Empire instrument does not meet the definition required for such status under the Small Tract Financing Act.

It is possible the Empire instrument could be construed as a common law deed of trust. However, deeds of trust have always had a somewhat uncertain status in Montana, particularly with regard to foreclosure proceedings or sales under trust deeds. Empire points to the holding in *Banking Corporation of Montana v. Hein* (1916), 52 Mont. 238, 156 P. 1085, as a case recognizing the validity of a deed of trust. Such is not the case. The court there refused to define the character of the writing before it because it had some of the characteristics of a deed creating an express trust, and some characteristics of a mortgage with a power of sale. Nevertheless, in *Hein*, the trustee under the trust deed, if that is what it was, sold the real property at public auction after default. No *judicial* foreclosure was followed. It was claimed that because there had been a foreclosure sale, by the trustee, that the debtor and those claiming under him had a right of redemption, as in the case of a mortgage. Our Court held that the right of redemption applied only to judicial sales and not to a sale by virtue of a power contained in a deed. The holding in *Hein* has never been reversed by this Court but in the year following the decision (1917), the legislature in effect reversed it by adopting what is now section 93-6006, R.C.M. 1947, which provides that rights of redemption are applicable to any sale of real estate under a power of sale contained in any mortgage or deed of trust. Such was the state of the law until 1963, when the legislature passed the Small Tract Financing Act. In fact, such state of the law was the reason for the passage of the Small Tract Financing Act. Prior thereto, because deeds of trust had to be construed when foreclosure occurred as providing a right of redemption the use of trust deeds as mortgage or hypothecation instruments had been devitalized in our state.

While as we said, this defective trust indenture might be construed to be a common law deed of trust, it is more suitable and consonant with legal principles to determine that the defective

trust indenture became in legal effect an equitable mortgage as between the parties. That we have here a defective trust indenture is beyond question. By statute, a law established for a public reason cannot be contravened by private agreement. Section 49-105, R.C.M.1947: Ordinarily, courts can refuse to enforce contracts which are against public policy. *Anaconda Federal Credit Union v. West* (1971), 157 Mont. 175, 483 P.2d 909. In the case of a defective security interest, the courts will find at least an equitable lien between the parties, to save the lender from an inequitable loss. An equitable lien, or equitable mortgage, arises when there is in existence written evidence of the intent of a grantor to subject real property to a security interest in favor of a lender. Justice Traynor, speaking for the California Supreme Court in *Coast Bank v. Minderhour* (1964), 61 Cal.2d 311, 38 Cal.Rptr. 505, 392 P.2d 265, said:

"'[E]very express executory agreement in writing, whereby the contracting parties officially indicate an intention to make some particular property, real or personal, or fund, therein described or identified, a security for a debt or other obligation . . . creates an equitable lien upon the property so indicated, which is enforceable against the property in the hands not only of the original contractor, but of his . . . purchasers or encumbrancers with notice.' (4 Pomeroy Equity Jurisprudence) (5th Ed. Symons) (Section 1235). Thus, a promise to give a mortgage or trust deed of particular property as security for a debt would be specifically enforced by granting an equitable mortgage. (Citing cases.) An agreement that particular property is security for a debt also gives rise to an equitable mortgage *even though it does not constitute a legal mortgage* (citing cases) . . ." 38 Cal.Rptr. at 506, 392 P.2d at 266, 267. (Emphasis added.)

Here, the Empire instrument is not a legal trust indenture. It does however come within the rule giving rise to an equitable mortgage. We hold therefore that the trust indenture in this case became in legal effect an equitable mortgage with all of the legal incidents flowing out from that legal relationship.

We turn now to determine the rights of the parties them-

selves and of third parties where the relationship of equitable mortgage exists. Montana, as far as we can discern, has never dealt with this question. A starting point is the quotation from *Pomeroy which is contained in the California case of Coast Bank*, above quoted. Here we find the equitable lien is enforceable against the original contractor, and also his purchases or encumbrances "with notice". Whether the words "with notice" mean only persons with actual notice, or include those with constructive, presumed or imputed notice, is not disclosed.

The most direct case on the point that we can find is *Pagenhardt v. Walsh* (1968), 250 Md. 333, 243 A.2d 494:

"Turning now to appellant's first point, we intend to reaffirm the rule of *Sixth Ward Building Association v. Willson*, 41 Md. 506 (1875); *Dyson v. Simmons*, [48 Md. 207] supra; and *Plitt v. Stevan*, [223 Md. 178, 162 A.2d 762] supra, that a defective mortgage will be enforced between the parties as an equitable lien, and will prevail over the claims of creditors who extended credit prior to the date of the mortgage, even though the claims of such creditors are reduced to judgment after the date of the mortgage. The lien of the defective mortgage is subordinate, however, to the claims of creditors who extended credit subsequent to the date of the mortgage, without actual knowledge of the existence of the mortgage." 243 A.2d at 498.

The mortgage in *Pagenhardt* was defective because an affidavit that the consideration was true and bona fide, statutorily required in Maryland, was incomplete. The instrument had been recorded; nevertheless, the Maryland court in effect held that judgment creditors who had extended credit subsequent to the date of the mortgage, without actual knowledge of the existence of the mortgage held a prior position to the mortgage, even though, as between the mortgagor and mortgagee, the mortgage could be enforced. In effect, the Maryland court does not recognize that constructive imputed, or presumed notice from the recording of the instrument applies to such subsequent judgment creditors.

Our search for the applicable rule in California is inconclusive.

In *Colley v. Chowchilla National Bank* (1927), 200 Cal. 760 255 P.188, 193, it is stated that equitable liens are enforceable against the original debtor, voluntary assignees and purchasers or encumbrances with notice, "actual or constructive". The last phrase with regard to constructive notice appears to be gratuitous, as the decision itself does not require the statement. In 33 Cal.Jur.2d Mortgages § 20, the same rule is repeated that an equitable mortgage is binding on subsequent encumbrances with notice, actual or constructive. Its citation for "constructive" notice is *Dingley v. Bank of Ventura* (1881), 57 Cal. 467, 470, 471. That case is one where the owner of the real property deeded to another a tract of land, but the deed contained a paragraph whereby the grantor reserved a lien on land as security for the payment of the balance of the purchase price. The deed was recorded. The California court held it was a mortgage in effect (it did not mention equitable mortgage), and since it was recorded, it gave notice to all that the lien was reserved therein. The court particularly noted however, that the form of the deed did not in any way offend the California law and so the deed was not a defective instrument in a sense of the trust indenture with which we are involved in the case of bar.

It is noteworthy that in 44 Cal.Jur.3rd *Mortgages* § 3, the authors have eliminated the words, "actual or constructive" in stating that an equitable mortgage is binding on subsequent encumbrancers with notice. It is apparent that the authors of Cal.Jur.3d are uncertain as to the status of an equitable mortgage with respect to constructive notice.

Remembering that the purported trust indenture transgresses the declared public policy of our State, it is proper for us to consider whether the recording of such an instrument is effective to give any notice to subsequent holders of interest in the real property involved. In other words, is legal notice given to others by the recording of an illegal 7 acre trust indenture? In most instances, the courts hold that instruments executed in violation of statutes which are recorded are not effective to give notice. Cases in point are *Pagenhardt*, supra; *Smith v. Thompson* (Okl.1965), 402 P.2d 882;

and in Montana, *Baum v. Northern Pacific Railway Co.* (1918), 55 Mont. 219, 175 P. 872 (an unacknowledged bill of sale). In *Citizens National Bank in Zanesville v. Denison* (1956), 165 Ohio St. 89, 133 N.E.2d 329, 59 A.L.R.2d 1293, it was held that a mortgage with a defective acknowledgement did not impute constructive notice upon recording, even though the defect was latent, and not apparent on the face of the instrument.

The rule in *Pagenhardt* is consonant with the principles enunciated in the foregoing cases and appears suitable to adopt as controlling here. We hold therefore, the trust indenture in this case is a defective trust indenture which will be enforced between the parties as an equitable lien; but the lien of such defective trust indenture is subordinate to the claims of subsequent encumbrancers and of judgment creditors who extended credit subsequent to the date of the instrument, without actual knowledge of the existence of the indenture.

If we were to hold that the recording of the trust indenture in this case constituted constructive, imputed or presumed notice sufficient to put others on inquiry, such holding would in effect make a nullity of the 3 acre (now 15 acre) limitation in section 52-404, R.C.M.1947, and in effect negate the declared public policy of the State. There would be no practical deterrent to the unimpeded use by lenders of such indentures on any tract in Montana, regardless of size. Moreover, it we were to hold that the recording of this defective instrument constituted constructive notice, we would in effect be giving the defective instrument the status of a legal mortgage; as we have already pointed out this instrument is not entitled to that status under section 52-417, R.C.M.1947. By the same token, if we were to simply restore the right of redemption to the borrower, again, the defective instrument would have the status of a legal mortgage. In executing the defective instrument here, the lender sought an illegal advantage, the deprivation of redemption rights of the borrower but the retention of a prior lien status. Restoration of the right or redemption would not be a sufficient deterrent to future use of such nonstatutory trust indentures. We are

not dealing here with inexperienced parties executing homemade security instruments. We are entitled to consider the expertise of the parties involved, *Tahoe National Bank v. Phillips* (1971), 4 Cal.3d 11, 92 Cal.Rptr. 704, 709, 480 P.2d 320, 325, in determining how best the public policy of the state as declared in the Small Tract Financing Act will be ensured.

■ One other contention of respondent Empire must be dealt with by us. Empire points to the provision of section 52-403(5), R.C.M.1947, and claims that those provisions protect the first-lien status of Empire even though the trust indenture statutory provision states:

"Where the trust indenture states that the real property involved does not exceed three (3) acres, such statement shall be binding upon all parties, and conclusive as to compliance with the provisions of this act relative to the powers to make a transfer, trust and power of sale."

However, that provision may not be construed to extend to third parties without actual notice who have no part in the trust indenture itself. It is applicable only to the parties to the instrument. The statutory provisions quoted is merely a reaffirmation of the legal principle that a defective trust indenture which in effect becomes an equitable mortgage as between the parties is enforceable between the parties as such. We are fortified in this conclusion by the fact that other subsections in the same statute define who are parties to a trust indenture, without reference to third parties.

Accordingly, we reverse the judgment of the District Court and remand the cause for a redetermination of the priorities of the parties herein involved, and the amounts due to each, based upon the principles here enunciated. Cost to the appellants.

MR. CHIEF JUSTICE HASWELL and JUSTICES DALY, HARRISON and SHEA concur.