**In re Margueritte L. MILLER, Debtor.**

**Bankruptcy No. 93–30866–11.**

United States Bankruptcy Court,
D. Montana.

March 4, 1994.

Ronald A. Bender, Worden, Thane & Haines, P.C., Missoula, MT, for First Interstate Bank of Commerce.

James A. Patten, West, Patten, Bekkedahl & Green, Billings, MT, for debtor.

## ORDER

JOHN L. PETERSON, Bankruptcy Judge.

At Butte in said District this 4th day of March, 1994.

In this Chapter 11 case, the Debtor–In–Possession (DIP) has filed an objection to the proof of secured claim filed by First Interstate Bank of Commerce (Bank) in the sum of $69,578.17, plus post-petition interest, costs and attorneys' fees. The latter items are not quantified in the Proof of Claim. The objection filed pursuant to F.R.B.P. Rule 3007 denies any obligation whatsoever, and in the alternative, states the Debtor is entitled to an offset for damages, including attorney fees, which Debtor has sustained as a result of the Bank's attempted sale of real property of the Debtor to Mullan Trail Enterprises. While the objection is framed as to a complete denial of any sum owing, the parties have submitted the matter to the Court on an agreed statement of facts which solely places into issue the validity, not amount, of the claim as a secured claim.

---

The Debtor's objection has been filed pursuant to F.R.B.P. Rule 3007. Under such Rule, it is provided, in pertinent part, "[I]f an objection to a claim is joined with a demand for relief of the kind specified in Rule 7001, it becomes an adversary proceeding." Since the stipulated facts request a determination of the validity of the Bank's lien, this proceeding is an adversary proceeding. *See, In re Jones,* 122 B.R. 246, 250 (W.D.Pa.1990); *In re National Oil Co.,* 112 B.R. 1019, 1020 (Bankr.D.Colo.1990) (where objection is joined with demand for relief of the kind specified in Rule 7001, the matter becomes an adversary proceeding). Therefore, the fact the parties do not invoke procedures ordinarily available in an adversary proceeding is not fatal to the determination of the pending objections. *Matter of Chapman,* 132 B.R. 132, 144 (Bankr.N.D.Ill.1991); *In re Zobenica,* 109 B.R. 814, 816 (Bankr. W.D.Tenn.1990). In sum, the parties have had full opportunity to raise any issue concerning the validity, priority or extent of the Bank's lien. Rule 7001(2).

The agreed facts with the Exhibits attached are as follows:

1. On January 17, 1992, Margueritte L. Miller executed a trust agreement naming First Interstate Bank as trustee. Exhibit 1. On the same date, she conveyed by deed approximately 890 acres of real property comprising the Kona Ranch in trust to First Interstate Bank. Exhibit 2.

2. First Interstate in May of 1992, retained Nick Kaufman of WGM Company, a land-use planning and engineering firm in Missoula, Montana, for consulting services on behalf of the trust.

3. On November 30, 1992, First Interstate Bank executed an earnest money agreement for the sale of a 20–acre parcel known as COS 4166 on the south border of Kona Ranch to Hartungs. Exhibit 3. The engineering firm of Eli & Associates who had staked the parcel was retained by the First Interstate to complete the survey.

4. In November of 1992, First Interstate Bank on behalf of the trust retained Steven Hall, an M.A.I. appraiser, of Hall–Widdoss, to give advice as to the sale of the property and to perform an appraisal.

5. First Interstate on February 10, 1993, executed an earnest money agreement with Mullan Trail. Exhibit 4.

6. On January 26, 1993, First Interstate Bank as trustee filed a Petition for Judicial Supervision, pursuant to MCA § 72–35–101, et seq., seeking authority to sell the real property comprising the trust assets and to borrow $16,000 from First Interstate Bank, with $12,000 to satisfy a prior Herndon judgment and $4,000 to be paid to the appraiser.

7. By ex parte order, dated January 26, 1993, Judge Harkin authorized the trust to borrow $16,000 at eight percent (8%) [interest], payable on demand for the purposes contained in the petition, with such loan being repaid from the sale of any real property and also authorized the trust to distribute the remaining funds of $8,500 for Margueritte's (Debtor) benefit.

8. By motion, dated February 22, 1993, First Interstate Bank requested an order from state court approving the sale of the property to Hartung and a sale of the property to Mullan Trail Enterprises, Inc.

9. Margueritte L. Miller, Doug and Phil Miller filed formal objections to the motion requesting approval of the Mullan Trail Enterprises sale.

10. On March 30, 1993, pursuant to written demand of Margueritte L. Miller, the provisions of the trust agreement itself and Montana law, First Interstate Bank, by Quit Claim Deed, dated March 30, 1993, and recorded March 30, 1993, at 9:43 a.m., in Vol. 376 of Micro Records of the county of Missoula on page 1092 (Exhibit 5), conveyed the real property back to Margueritte L. Miller, "as is" subject to all outstanding claims, rights and interest. Exhibit 6.

11. The motion to approve the Mullan Trail Enterprises, Inc., sale and the Hartung sale came on for hearing before state court on April 22, and April 23, 1993, pursuant to notice duly given to all interested parties. First Interstate Bank was represented by Ronald A. Bender, Esq. Margueritte L. Miller was represented by Alan R. Andersen, Esq. and Paul C. Drecksel, Esq. J. Philip Miller was represented by

William K. VanCanagan, Esq. Douglas E. Miller was represented by Jon R. Binney, Esq. Mullan Trail was represented by Donald V. Snavely, Esq. Witnesses testified and exhibits were introduced, briefs were submitted by all parties.

12. On May 21, 1993, Judge Larson entered his order in regard to the Hartung sale. Exhibit 7. On May 27, 1993, Judge Larson entered his Findings of Fact, Conclusions of Law and Order in regard to the Mullan Trail sale. Exhibit 8.

13. First Interstate incurred and paid Hall–Widdoss fees in the amount of $9,112.50 for appraisal work. Of that amount $2,612.50 comprised First Interstate's own funds and remains unreimbursed from trust funds. Exhibit 9.

14. First Interstate incurred and paid WGM Group fees in the amount of $9,379.75 for consulting and survey work. The total amount comprised First Interstate's own funds and remains unreimbursed from trust funds. Exhibit 9.

15. From January 21, 1992, through February 28, 1993, the law firm of Boone, Karlberg & Haddon (James Benn and Dave Cotner primarily) provided legal advice and services to First Interstate as trustee in the amount of $20,875.07 of attorney fees and $2,042.97 of costs. Exhibit 9. First Interstate has incurred this amount of attorneys fees which remains unpaid outstanding.

16. From March 1993, through June 16, 1993, the law firm of Worden, Thane & Haines provided legal advice and services to First Interstate as trustee in the amount of $15,879.50 of attorney fees and $1,627.39 of costs. Exhibit 9. This amount was incurred and paid by First Interstate with its own funds which remains unreimbursed from trust funds.

17. In March of 1993, Galusha, Higgins & Galusha was retained by First Interstate to prepare the tax returns with fees amounting to $700 which was incurred and paid by First Interstate with its own funds which remain unreimbursed from trust funds. Exhibit 9.

18. In February of 1993, First Interstate had a refrigerator repaired by John's appliance in the amount of $73.45 which amount was incurred and paid by First Interstate with its own funds which remain unreimbursed from trust funds. Exhibit 9.

19. First Interstate incurred trustee fees and additional time and expenses from January 17, 1992, through April 23, 1993, in the amount of $15,135 which amounts remain unreimbursed from trust funds. Exhibit 9.

20. On November 23, 1993, First Interstate filed its secured claim for a trustee's lien in the amount of $69,578.17 pursuant to Mont. Code Ann. Section 72–33–632 as former trustee against the trust property comprising the real estate known as the Kona Ranch for the following advances made for the protection of the trust and for expenses, losses and liabilities sustained in the administration of the trust property or because of ownership or control of the trust property for Hall–Widdoss fees of $2,612.50; WGM fees of $9,379.75; Eli & Associates fees of $1,252.51; John's Appliance fees $73.45; attorney fees of Boone, Karlberg & Haddon $22,918.07; trustee fees and expenses $15,135; Galusha, Higgins & Galusha fees $700, and attorney fees of Worden, Thane & Haines, P.C., $17,506.89. Exhibit 9.

21. On November 23, 1993, First Interstate filed its unsecured claim in the amount of $16.504.99 in regard to a loan dated January 28, 1993, in the amount of $16,000 with interest at 8% pursuant to an order dated January 26, 1993, in Cause No. A–1667 Montana Fourth Judicial District Court, Missoula County.

22. On December 2, 1993, Debtor filed an objection to both claims denying any obligation to First Interstate, or in the alternative, that Debtor is entitled to an offset for damages including attorney fees, which Debtor has sustained as a result of the claimant's attempted sale of real property of the Debtor to Mullan Trail Enterprises.

Pursuant to another stipulation by the parties, this Court entered an Order on February 8, 1994, framing the issue to be determined by the Court on the secured claim as to whether the claim is secured or unsecured.

Therefore, the Debtor does not contest the amount of the claim, or the validity of each expenditure in this proceeding, but only contests whether the Bank has a valid secured claim under Montana law. The Debtor, nevertheless, has reserved the right to claim an offset and damages, and to contest each separate item of the Bank's claim in a separate proceeding.

■ The Bank relies on Mont.Code Ann. Section 72–33–632 as the basis for its secured position. That section provides:

> The trustee has an equitable lien on the trust property as against the beneficiary in the amount of advances, with any interest, made for the protection of the trust, and for expenses, losses, and liability sustained in the administration of the trust or because of ownership or control of any trust property.

The Debtor claims that since the Bank "took no action to provide notice to the public of the existence of its lien prior to the commencement of this case, that lien cannot be enforced by reason of the provision of § 544(a)(3) of the Code, 11 U.S.C. § 544." The Debtor asserts that § 544 allows the Debtor to avoid such "secret" lien. The Bank counters the lien is "imputed by law", no recording is required and the creation of the trust is sufficient to create the lien under § 72–33–632. Neither party discusses 11 U.S.C. § 545(2) or the seminal case in this circuit on avoidance of statutory liens, *In re Loretto Winery, Ltd.*, 898 F.2d 715 (9th Cir. 1990).

*Loretto Winery* deals with a California statutory lien on all farm products sold by a farm producer. The lien arises from sale of the product, and does not contain any formal requirements, such as recording or notice filing, to perfect the lien. *Loretto Winery,*

discussing § 545(2), holds when a trustee or DIP can avoid a statutory lien as follows:[1]

> Subsection (2) allows the trustee to avoid a lien that "is not perfected or enforceable at the time of the commencement of the case against a bona fide purchaser that purchases such property at the time of the commencement of the case, whether or not such a purchaser exists" (the hypothetical bona fide purchaser test). This appeal focuses on this test's application to the California producer's lien. Because the trustee's avoidance power is a question of law, we review *de novo*. *In re New England Fish Co.*, 749 F.2d 1277, 1280 (9th Cir.1984). Whether the lien is enforceable against a bona fide purchaser is determined under state law. *In re Phillips Constr. Co.*, 579 F.2d 431, 432 (7th Cir. 1978) (upholding validity of mechanic's lien); *cf. In re Marino*, 813 F.2d 1562, 1565 (9th Cir.1987) (powers of 11 U.S.C. § 544(a) bona fide purchaser of real property defined by state law).

After discussion of competing policy interests between bankruptcy and state law based liens, and analysis of case law from other circuits, the *Loretto Winery* court states:

> [W]e conclude that the proper inquiry is whether the particular lien is good against a bona fide purchaser under the laws of the state. . . .
>
> \* \* \* \* \* \*
>
> We look to words of the [state] statute itself in our quest to determine whether the lien passes the bona fide purchaser test.[2] In doing our analysis, we follow the accepted rules of statutory construction: we construe to fulfill the law's purpose; we construe in the context of the entire statutory scheme; we avoid inconsistency; we

---

1. The Court reversed the Bankruptcy Appellate Panel (BAP) which held that the trustee can avoid the California producer's lien because it is a secret lien, and California law disfavors upholding secret liens. *In re Loretto Winery, Ltd.*, 81 B.R. 573, 575–578 (9th Cir. BAP 1987). The BAP defines a "secret" lien as one requiring no perfection requirements. The circuit court concludes section 545 does not permit a trustee to avoid a lien just because it is secret, but only if it is not good against a bona fide purchaser under California law. 898 F.2d at 719.

2. The Montana Supreme Court has applied the same test in *Howell, et al. v. State, et al.*, —— Mont. ——, 868 P.2d 568 (1994). The Court held the "rules of statutory construction require the language of a statute to be construed according to its plain meaning; if the language is clear and unambiguous, no further interpretation is required. *GBN, Inc. v. Dep't of Revenue* (1991), 249 Mont. 261, 265, 815 P.2d 595, 597."

avoid superfluity and nullities; we give language its ordinary meaning; and we favor the more reasonable result. (citing cases). Finally, as noted, we construe the statute liberally to achieve its purposes. (citing case). *Id.* at 720–722.

We turn therefore to § 72–33–632, examining first the history of such section.[3]

In Volume 6, Montana Code Annotated, *Annotations* p. 409, Section 72–33–632, *Trustee's Lien*, the Official Comments state:

Adopted from California Probate Code Ann. (1987) section 15685. This section is the same in substance as part of section 3(c)(18)[4] of the Uniform Trustee's Powers Act (1964); however, the reference to the equitable nature of the lien is new. An equitable lien is not good against a transferee of trust property who gives fair consideration for the property without knowledge of the lien. See, generally, 1 J. Pomeroy, Equity Jurisprudence sections 165, 171(4)(5th Ed.1941); see also Restatement (Second) of Trusts section 244 comment (c) (1957). The reference in this section to liabilities because of ownership or control of trust property involves liability for taxes and assessments on trust property and tort liability arising out of trust property. See also section 205 [72–36–102] (personal liability of trustee arising out of ownership or control of trust property).

Section 15685 of the California Probate Code is identical to § 72–33–632. There are no Montana or California cases construing either section. An 1889 California case, *Woodard v. Wright*, 82 Cal. 202, 22 P. 1118, holds that where a trustee has expended money in necessary repairs and improvements of the trust estate, approved by the *cestui que* trust, the trustee may hold the land on which the money was expended till the sum is repaid. *Bixby v. Hotchkis, et al.*, 58 Cal. App.2d 445, 136 P.2d 597 (1943), involving an action between the trustee and beneficiaries, holds the trustee "has a lien upon the trust property", citing Restatement of the Law of Trusts, § 244c. *Id.* 136 P.2d at 601. Neither decision concerned a bona fide purchaser for value without notice. Restatement (Second) of the Law of Trusts, § 244, states the "Trustee is entitled to indemnity out of the trust estate for expenses properly incurred by him in the administration of the trust." Comment "c" states the trustee has a security interest in the trust property to secure payment of such expenses. ·

 Under Montana law, a purchaser has constructive notice of every matter that appears in the title to real property and is bound to such matter. *Stanford v. Rosebud County*, 251 Mont. 128, 822 P.2d 1074, 1079 (1991). Further, *Rase v. Castle Mountain Ranch, Inc.*, 193 Mont. 209, 631 P.2d 680, 685 (1981) holds:

It is generally conceded that when someone purchases land under circumstances which suggest outstanding equities in third parties, there is imposed on the purchaser a duty to make a reasonable investigation as to the existence of outstanding claims against the property, and one who fails to use due diligence to ascertain the facts within his reach is not an innocent purchaser. *Berge v. Fredericks* (1979), 95 Nev. 183, 591 P.2d 246; *Modrok v. Marshall* (Alaska 1974), 523 P.2d 172; *MacEwen v. Peterson* (1967), 102 Ariz. 209, 427 P.2d 527. When there appears possession of land by a person other than the record holder, which possession is inconsistent

---

3. According to the Chapter Compiler's Comments, Mont.Code Annotated, *Annotations*, Chapter 33, Trust Code:

The Montana Trust Code is based in substantial part on the California Trust Law, the California Probate Code Sections 15000 through 18201, which was adopted in California in 1986, and became operative in California on July 1, 1987. The official comments that follow each section cite the corresponding California Section, if any. If the Montana Section constitutes a change in substance from the corresponding California provision, the official comment includes a discussion of the change.

If the Montana Section is based upon a statute of a state other than California, the state's statute is cited in the official comments.

4. Subsection (18) allows the Trustee "to borrow money to be repaid from trust assets or otherwise, to advance money for the protection of the trust, and for all expenses, losses and liabilities sustained in the administration of the trust or because of the holding or ownership of any trust assets, for which advances with any interest *the trustee has a lien on the trust assets as against the beneficiary;*" (emphasis added).

with the record title, there is a duty of inquiry imposed upon a purchaser of that land. *See, Valley National Bank of Ariz. v. Avco Develop. Co.*, (1971), 14 Ariz.App. 56, 480 P.2d 671.

Further, an equitable lien has been defined as one which arises from a written contract and which allows the creditor to charge or satisfy its debt out of some particular property belonging to the debtor. *Clark v. Armstrong & Murphy*, 180 Okl. 514, 72 P.2d 362, 365, 366 (1937). *Theatre Realty Co. v. Aronberg–Fried Co.*, 85 F.2d 383, 388 (8th Cir. 1936) holds:

> "These circumstances embody all the elements of an equitable lien, which is the right to have property subjected in a court of equity to the payment of a claim."

In *Amsterdam Lumber, Inc. v. Dyksterhouse*, 179 Mont. 133, 586 P.2d 705 (1978), the Montana Supreme Court dealt with the definition of an equitable lien in the context of a defective deed of trust or mortgage. The deed of trust was duly recorded, but exceeded the permissible limitation on the number of acres which a deed of trust could encumber under Montana law, so the trust indenture was thus not enforceable under Montana law. The court, nevertheless, discussed the applicable law on equitable liens, particularly as it applies to third party purchasers, i.e., a bona fide purchaser without notice. The Court states:

> An equitable lien, or equitable mortgage, arises when there is in existence written evidence of the intent of a grantor to subject real property to a security interest in favor of a lender.

> \* \* \* \* \* \*

We turn now to determine the rights of the parties themselves and of third parties where the relationship of equitable mortgage exists. Montana, as far as we can discern, has never dealt with this question.

A starting point is the quotation from *Pomeroy* which is contained in the California case of *Coast Bank*, above quoted [*Coast Bank v. Minderhout*, 61 Cal.2d 311, 38 Cal.Rptr. 505, 392 P.2d 265 (1964)]. Here we find the equitable lien is enforceable against the original contractor, and also his purchases or encumbrances "with notice". Whether the words "with notice" mean only person with actual notice, or include those with constructive, presumed or imputed notice, is not disclosed.

\* \* \* \* \* \*

The rule in *Pagenhardt* [*v. Walsh*, 250 Md. 333, 243 A.2d 494 (1968)] is consonant with the principles enunciated in the foregoing cases and appears suitable to adopt as controlling here. We hold therefore, the trust indenture in this case is a defective trust indenture which will be enforced between the parties as an equitable lien; but the lien of such defective trust indenture is subordinate to the claims of subsequent encumbrancers and of judgment creditors who extended credit subsequent to the date of the instrument, without actual knowledge of the existence of the indenture. *Id.* 586 P.2d at 709–711.

The court specifically refused to allow the defective deed of trust to constitute constructive, imputed or presumed notice. *Id.* at 711.[5] A fair reading of *Amsterdam Lumber* would lead to the conclusion that as to a bona fide purchaser for value, an equitable lien cannot be impressed upon the subject property unless that purchaser had actual, not constructive, notice of the lien.

It is true *Amsterdam Lumber* dealt with an instrument which violated the public policy of Montana, and the court strictly construed the notice requirements to favor the third party encumbrances so as to ensure the public policy of the state. However, if a subsequent lien creditor is protected by such

5. *See, Mills v. Damson Oil Corp.*, 720 F.2d 874, 876 (5th Cir.1983), where, upon certification of the same issue to the Mississippi Supreme Court, that court held that a defective instrument of record imparted constructive notice binding subsequent purchasers by holding:

> We recognize there is a division of authority, but we are convinced better reasoning sup-

ports the affirmative. See *Amsterdam Lumber, Inc. v. Dyksterhouse*, 179 Mont. 133, 586 P.2d 705, 711 (1978); *Wayne Building and Loan Co. v. Hoover*, 12 Ohio St.2d 62, 231 N.E.2d 873 (1967); *Citizens National Bank v. Denison*, 165 Ohio St. 89, 59 Ohio Ops. 96, 133 N.E.2d 329 (1956); 59 A.L.R.2d at 1316, and cases cited therein.

strict requirement of actual notice of the equitable lien, clearly a hypothetical bona fide purchaser for value is entitled to the same protection under Montana law.

This particularly is true when by definition a bona fide purchaser is one who takes property upon payment of value, in good faith, and lacking notice of any defect in the title. Mont.Code Ann. § 70–20–303 provides:

> Every grant of an estate in real property is conclusive against the grantor, also against everyone subsequently claiming under him, except a purchaser or encumbrancer who in good faith and for a valuable consideration acquires a title or lien by an instrument that is first duly recorded.

I make this conclusion in this case where the only evidence of the written trust agreement could be found in the Bank's private files, and not of record, and the bank had terminated its trust connection by recording of the quit claim deed.

The Bankruptcy Code thus permits a DIP, like a trustee, 11 U.S.C. § 1107(a), to avoid a statutory lien if it is unperfected or unenforceable against an entity acquiring the rights to a bona fide purchase at the time of the commencement of the case, whether or not such a purchaser exists. For the purpose of § 545(2), the DIP is accorded the status of a hypothetical bona fide purchaser, a status acquired at the date of the filing of the bankruptcy petition. 4 *Collier on Bankruptcy*, § 545.04 (15th Ed.). Since § 72–33–632 does not require any form of perfection by notice or filing within its express terms, the question is whether the statutory lien could be enforced on the bankruptcy petition date when the DIP became a bona fide purchaser.

As of the petition date on June 21, 1993, there was no express written trust in existence. By that date, the trustee Bank had deeded to the Debtor all of the trust property.[6] Record title as of the petition date thus showed the property in the name of the Debtor, free of trust. It is this record title to which a bona fide purchaser would be bound under the holding of *Stanford v. Rosebud County, supra*. Coupled with such record title, it is also undisputed in the agreed facts that as of the bankruptcy petition date, the Debtor was in sole possession of the property against which the equitable lien is asserted, and no state court action was pending by the Bank to seek a lien against the property under § 72–33–632. Under the holding of *Rase v. Castle Mountain Ranch, Inc., supra*, a bona fide purchaser would have no duty to investigate the existence of outstanding claims against the property for possession was consistent, not inconsistent, with record title. It must be also emphasized that by the very definition of "equitable lien" as stated above, some action filed in a court of equity is required to enforce the amount and validity of the lien. That action must necessarily under § 545 be in existence at the date of the filing of the bankruptcy petition. In other words, the equitable lien, being a mere right to proceed against specific property, can only be enforced by an appropriate legal action.

> "it [equitable lien] is simply a right of a special nature over the thing, which constitutes a charge or incumbrance [sic] upon the thing, so that the very thing itself may be proceeded against in an equitable action. 3 Pomeroy, Eq.Jur. (4th Ed. § 1233)."

*Aldrich v. R. J. Ederer Co.*, 302 Ill. 391, 134 N.E. 726, 728 (1922).

The Official Code Comments also gave a clear indication that the trustee's lien under the facts of this case does not withstand § 545(2) since the comment specifically states, citing Pomeroy, Eq.Jur. 165, that the lien is not good against a transferee of that property who gives fair consideration for the property without knowledge of the lien. This is precisely the definition of the hypothetical bona fide purchaser under § 545(2).

---

**6.** Under Finding of Fact No. 10, it is agreed the Bank gave the quit claim deed with certain conditions which are expressed in a private letter between counsel for the Bank and the Debtor. That letter was never made a public record by recording. Nor were the conditions set forth in the Quit Claim Deed. The contents of the letter asserting a lien under § 72–33–632 thus do not bind a hypothetical bona fide purchaser since such conditions are not record title. *Stanford v. Rosebud County, supra*.

Finally, applying the plain meaning test on statutory construction, supra, Ftn.2, Section 72–33–632 states the "trustee has an equitable lien on the trust property *as against the beneficiary* ...." (Emphasis added). The statute does not grant such lien against a bona fide purchaser for value without actual notice.[7] In sum, the beneficiaries, not their successor-in-interest, are the only class subject to the lien. Had the statute been drafted to include "beneficiary, or a successor-in-interest", a different result might occur. The plain meaning of the words of the statute thus defeat the lien of the Bank as to the DIP. I hold therefore that the Debtor's objections to the secured claim of the Bank are meritorious.

IT IS ORDERED the objections of the Debtor to the secured Proof of Claim of First Interstate Bank of Commerce are sustained and such claim shall be treated as a general, unsecured claim in the sum of $69,578.17.

Gary T. Farrell, Office of the U.S. Trustee, Spokane, WA, for U.S. Trustee.

William J. Smith, Wenatchee, WA, for Ralph J. and Dorothy K. Morse.

---

**7.** Even if Montana law followed those jurisdictions where constructive notice was sufficient to defeat a bona fide purchaser, the facts of this case show no constructive notice since by the petition date, the trust had terminated and the Bank had no action pending to enforce the lien.