No. 14625

IN THE SUPREME COURT OF THE STATE OF MONTANA

1980

---

IN THE MATTER OF THE ESTATE OF
ISABELLA WALLACE,
                    Deceased.

No. 14794

---

ROBERT J. SUTTON et al.,

                    Plaintiff and Appellant,

vs.

HELEN McALEAR et al.,

                    Defendants and Respondents.

---

Appeal from:   District Court of the Twelfth Judicial District,
               Honorable B. W. Thomas, Judge presiding.

Counsel of Record:

    For Appellants:

        Church, Harris, Johnson & Williams, Great Falls, Montana
        Douglas Allen argued, Great Falls, Montana
        Bunn and Brown, Chester, Montana

    For Respondents:

        Jardine, Stephenson, Blewett & Weaver, Great Falls, Montana
        Dale Schwanke argued, Great Falls, Montana
        Alexander and Baucus, Great Falls, Montana
        Edward Alexander argued, Great Falls, Montana
        Weber, Bosch, Kuhr, Dugdale, Warner and Martin,
         Have, Montana
        John Warner argued, Havre, Montana
        William F. Browning appeared, Great Falls, Montana
        Allen L. McAlear, Bozeman, Montana

---

                    Submitted:  January 18, 1980

                    Decided:

Filed:

_Thomas J. Kearney_
                                    Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

Robert J. Sutton, estate administrator, appeals from two orders of the Liberty County District Court, dismissing certain claims of his civil suit and denying his objections to a 1942 decree of distribution in the Isabella Wallace estate.

In stating the facts, it is easier to segregate the pertinent incidents by date as follows:

June 15, 1938-Isabella Wallace executed a Will which was prepared by J. H. McAlear, her attorney. In the Will Isabella Wallace named H. J. McAlear and W. H. Shafer as executors and testamentary trustees and devised life estates in her real property to her two sons William John, Jr. and James H. Wallace. In addition she devised all personal property in trust for their benefit during their lives.

Paragraph VIII of her Will provides:

"I direct that after the decease of my two sons
my estate, both real and personal property, go fully
and absolutely to W. H. Schafer and J. H. McAlear,
share and share alike."

It is this provision which forms the point of origin for the current dispute, the respondent claiming the creation of a vested remainder interest with the enjoyment of such interest delayed until the death of both of the sons, while the appellant contends any remainder interest was contingent upon Schafer and McAlear surviving the Wallace brothers.

June 13, 1940-Isabella Wallace died survived by her two sons.

July 25, 1940-Isabella Wallace's Will was admitted to probate and W. H. Schafer was appointed executor of the estate. McAlear acted as the attorney for the executor.

-2-

July 14, 1941-Petition filed for final distribution of the estate.

August 14, 1941-Final distribution of the estate was ordered by Judge C. B. Elwell to Shafer and McAlear as testamentary trustees for the use and benefit of the Wallace brothers. A remainder over in the real property was decreed to the trustees. The residue of the estate was decreed to go to the trustees "in the event that the . . . trustees should be predeceased by the two cestuis . . ."

February 14, 1942-Motion to set aside the decree of distribution of the estate was filed by Louis P. Donovan, attorney for the moving parties. The motion was expressly based on the "inadvertent mistake" that the August 14, 1941 decree failed to distribute all of the property of the estate, this omission consisting of the remainder of the real property and, the remainder of personal property after the termination of the life estates in the event the Wallace Brothers survived the two trustees.

March 12, 1942-By a written consent on this date the Wallace brothers agreed to join in the motion to set aside the distribution. Also on this date the motion was argued before Judge C. B. Elwell.

March 20, 1942-Order setting aside the initial decree of distribution was granted by Judge C. B. Elwell.

July 9, 1942-Pursuant to a new petition, a second decree of distribution of the estate of Isabella Wallace was entered by the court, distributing the remainder interests of both the real and personal property to Schafer and McAlear after the termination of the life estates and trusts.

September 10, 1968-W. H. Schafer died on this date. Subsequently Mary E. Schafer, his wife was appointed as a replacement cotrustee.

October 25, 1968-J. H. McAlear died on this date. Trudy McAlear Elsberry, his daughter, was later appointed as a cotrustee on May 28, 1969.

July 1, 1970-Mary E. Schafer died on this date and subsequently Robert J. Sutton was appointed as a replacement cotrustee.

November 20, 1971-William John Wallace, one of Isabella Wallace's sons died on this date.

September 26, 1973-James H. Wallace, the other of Isabella Wallace's sons, died. Sutton was later appointed administrator of his estate.

February 1, 1974-A petition for the termination of the trust and life estates established under the Will of Isabella Wallace was filed by the heirs of J. H. McAlear.

September 12, 1974-Sutton, as the appointed administrator of the individual Wallace brothers' estates, filed an objection to the February 1, 1974 termination petition. The objection was based on allegations of fraud, misrepresentation and undue influence in the execution of Isabella Wallace's Will by Schafer and McAlear.

July 18, 1975-Sutton, as administrator of the Wallace Brothers' estates, filed a civil action against the respondents based on the same allegations against Schafer and McAlear.

October 23, 1975-(Probate cause.) Judge B. W. Thomas entered an order dismissing Sutton's September 12, 1974 objection for lack of jurisdiction. The order also granted the February 1, 1974 petition of the McAlear-Schafer heirs. The Court thereby declared and divided ownership of the Isabella Wallace remainder estate among the heirs of Schafer and McAlear.

December 16, 1975-(Probate cause.) After assorted objections and motions by both parties, Judge Thomas ordered determination

-4-

of the various claims, as well as final distribution of the Isabella Wallace estate, be reserved until determination of the issues in the civil action.

June 13, 1978-(Civil cause.) Judge Thomas entered an order dismissing claims in Sutton's civil suit, basically holding against Sutton on the allegations against Schafer and McAlear.

September 14, 1978-(Probate cause.) After the action of the court in the civil action on June 13, 1978, Judge Thomas in the probate action dissolved the restrictions of his December 16, 1975 order and ordered distribution of the remainder assets of the Isabella Wallace Estate to the McAlear-Schafer heirs.

March 8, 1979-(Civil cause.) Judge Thomas, pursuant to Rule 54(b), M.R.Civ.P., ordered final judgment entered on its June 12, 1978 order in the civil action.

Appeals have been timely taken and the two suits have been consolidated for purposes of review. It is from these last two court actions that Sutton appeals setting forth the following issues for our consideration:

(1) Did the District Court err in its September 14, 1978 order, in the Isabella Wallace probate, distributing the assets of the estate to the McAlear-Schafer heirs?

(2) Did the District Court err in its June 13, 1978 order, by dismissing claims in Sutton's civil complaint?

(3) Should Sutton be allowed to file his amended complaint?

In the present case the thrust of appellant's argument is that a fraud was perpetrated upon the Wallace brothers by the two testamentary trustees, McAlear and Schafer, in obtaining their signature to a consent which thereby resulted in setting aside the first distribution and the issuance of the second decree. In so doing the appellant alleges the court was deceived into making a wrongful distribution of the assets of the estate of Isabella Wallace.

-5-

In cases of undue influence as in actual fraud, the burden is upon the party alleging the fraud to set forth facts proving a fraud did in fact occur. An essential element of this proof is the existence of an injury to a right of the plaintiff.

> "Generally speaking, the injury or damage which the plaintiff must prove must be something more than contingent damage which may or may not occur. (Citing authority.) Plaintiff may recover when he shows that he has sustained some pecuniary damage or injury by reason of having been put in a position worse than he could have occupied if there had been no fraud, but he cannot recover where he does not show that he has sustained such damage or injury."
> Denny v. Brissonneaud (1973), 161 Mont. 468, 472, 506 P.2d 77, 79.

In the present case the appellant has not satisfied this burden of proof. Although the appellant has addressed quite thoroughly a case for deprivation of a right, he has completely failed to establish the existence of a right personal to him or the estates he is representing on which he may seek to recover. Appellant must have a right before he may receive a remedy.

Not only must a right be asserted, but such a right must be shown to exist by substantial evidence. This burden is placed upon the contestant. In Re Maricich's Estate (1965), 145 Mont. 146, 161, 400 P.2d 873, 881. In the instant case the appellant must demonstrate that if the second decree of distribution (i.e. the July 9, 1942 decree) is set aside, that the Wallace brothers, the individual estates of whom the appellant is representing, would have a right to the contested remainder property interests. Stated more succinctly, but for the consent of the Wallace brothers, would the brothers have received the remainder interest of the real and personal property of the Isabella Wallace estate? This Court finds the answer to be in the negative.

The language of the Will itself does not leave anything to the Wallace Brothers (and therefore to any heirs taking through

-6-

their individual estates) except for a life estate in the
real property under paragraph IV, and as beneficiaries of a
trust of the personal property under paragraph VI.  Whatever is
left after the life estates or the end of the trust, be it a
remainder or a reversionary interest, will pass to McAlear and
Schafer under paragraph VIII.  This paragraph is a residuary
clause in the case of a reversion and a remainder-over after the
terminations of the life estates of the two brothers.

Appellant's argument that such interest as may exist
after termination of the life estates would pass intestate to
the respective estates of the Wallace brothers also fails.  Under
then existing Montana law Wills were to be construed so as
to avoid total or impartial intestacy.  Constructions leading
to intestacy were not favored by the courts.  Section 91-
210, R.C.M. 1947 (repealed Mont. Laws 1974); Blacker v.
Thatcher (9th Cir. 1944), 145 F.2d 255, 259; In Re Spriggs'
Estate (1924), 70 Mont. 272, 275, 225 P. 617, 618.

In addition such an interpretation would conflict with the
main purpose of making a Will which is to distribute <u>all</u> of the
estate property.  At the time of the probate of the Will, the
following statute provided:

> "<u>Certain words not necessary to pass a fee</u>.  The
> term 'heirs', or other words of inheritance, are
> not requisite to devise a fee, and a devise of
> real property passes all the estate of the testator,
> unless otherwise limited."  Section 91-213, R.C.M.
> 1947 (now section 72-11-311, MCA).

This statute was originally promulgated to abolish the
common law inference that no estate of inheritance was meant
to be passed in the absence of direct and express words creating
such an estate.  That same statute harmonizes with another
provision of the Uniform Probate Code, section 72-2-502, MCA,
which states that a Will should be "construed to pass all property
which the testator owns at his death, including property acquired
after the execution of the will."

This Court also recognizes that the doctrine of laches constitutes a further impediment to the claims of the appellant.

> ". . . Laches is not, as is a statutory period of limitations, a mere matter of elapsed time, but is principally a question of the inequity of permitting the claim to be enforced . . ."
>
> ". . .
>
> "Although lapse of time alone will not support a defense of laches, it has been held sufficient where it would be clearly inequitable to permit the enforcement of bare legal rights or where the other circumstances are such that the delay in the assertion of rights has been wholly unreasonable . . ." 27 Am.Jur.2d Equity, §163.

Furthermore, there is no absolute rule as to what constitutes laches in Montana. Each case must be determined according to its own particular circumstances. Montgomery v. First Nat. Bank (1943), 114 Mont. 395, 408, 136 P.2d 760, 766.

Applying the doctrine to the instant case, there is no question that the passage of 32 years since the Probate Court issued its second decree is of such a duration as to make a present attack on that decree inequitable. The situation is further compounded by the fact that every participant in the contested transaction is now deceased and has been for quite some time.

However, as we have already noted, the doctrine of laches is not just a matter of elapsed time.

> "Laches . . . is a concept of equity; it means negligence in the assertion of a right; it is the practical application of the maxim, 'Equity aids only the vigilant;' and it exists when there has been unexplained delay of such duration or character as to render the enforcement of the asserted right inequitable." Riley v. Blacker (1915), 51 Mont. 364, 370, 152 P. 758, 759; Montgomery, supra, 114 Mont. at 408-09; Johnson v. Johnson (1977), 172 Mont. 150, 155, 561 P.2d 917, 920.

In the present case, more than four years have passed from the time Sutton was appointed as cotrustee of the estate of Isabella Wallace until an allegation of fraud through an objection was filed by him in September 1974. Sutton had ample opportunity

-8-

to raise his objection within a reasonable time after assuming his trustee duties on July 1, 1970.

Furthermore, no reasonable excuse for such a delay has been asserted by Sutton so as to ameliorate his lack of vigilance and delay in filing his claim. This unexplained acquiescence by Sutton concerning his trustee duties indicates that he accepted the Will and distribution by the court as amended by judicial decree on July 9, 1942. This factor coupled with the elapsed time of thirty-eight years makes it inequitable for the appellant to attempt now further legal attack on the distribution based on the July 1942 decree.

The remaining issue relates to whether appellant can file his amended complaint in the civil action. The District Court refused leave to file part of the amended complaint, saying:

> ". . . Plaintiff cannot now amend his complaint as to all defendants without leave of Court. Plaintiff concedes that Claim I of his proposed amended complaint is a repetition of a claim or claims which were dismissed by the Order of June 12, 1978, and that, insofar as that claim is concerned, by his motion to amend he is asking the Court to reconsider that Order. Since the issues covered by Claim I of the proposed amended complaint have previously been fully considered by the Court and dismissed on their merits, the Court finds that there has been no showing that justice requires the allowance of the amended complaint insofar as those issues are concerned." Order On Motion For Leave To File Amended Complaint, document 58, civil suit.

The order of the District Court applies only to the issues it settled, and on which we now agree. In the amended complaint, Sutton abandoned the will contest. His claim to intestate division of the remainder property of the Isabella Wallace estate, as we have shown, depends on his ability to prove a right to that property under her Will. Since the claim has no foundation in law, the District Court was correct in refusing to grant leave to file an amended complaint which tendered the same claim after the Court's decision against it. It makes no difference

-9-

that the amended complaint was tendered before some of the McAlear-Schafer claimants had filed a responsive pleading to the first Sutton complaint. Rule 15(a), M.R.Civ.P., does not preclude the District Court from striking issues already decided. Nothing in the District Court's order precludes Sutton from filing his amended complaint as to other issues undecided, or from amending again so as to include only issues undecided. Since we agree with the District Court on its resolution of the law applicable to the remainder and residue property under the Isabella Wallace Will, we find no error in the order of the District Court denying leave to file an amended complaint which would raise those issues again.

The decisions of the District Court in the civil and probate proceedings are affirmed. The causes are remanded for further proceedings consonant with this opinion.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices

-10-