No. 85-78

IN THE SUPREME COURT OF THE STATE OF MONTANA

1985

---

DONNA RICHARDSON, MARY FARREN, ETTA
VERNICE SUTTON, and VERNIS KEHR, and
GLORIA R. ROHLFING, Intervenor,

Plaintiffs and Appellants,

-vs-

RICHLAND COUNTY, a local government
in the State of Montana,

*Defendant and Respondent*

---

APPEAL FROM: District Court of the Seventh Judicial District,
In and for the County of Richland,
The Honorable A. B. Martin, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Olsen, Christensen & Gannett; Paul G. Olsen argued,
Billings, Montana
Dunaway, O'Connor & Moe, P.C.; Peder Moe, Jr.,
Billings, Montana

For Respondent:

Victor G. Koch argued, Richland County Attorney,
Sidney, Montana

---

Submitted: June 28, 1985

Decided: December 17, 1985

Filed: DEC 17 1985

_____
Clerk

Mr. Justice Fred J. Weber delivered the Opinion of the Court.

In Richland County District Court, the plaintiffs brought an action to quiet title to a 6¼% royalty interest claimed in the production of oil and gas from a one-half section of Richland County land. Following submission on extensive stipulated facts, the District Court quieted title in Richland County and the plaintiffs appeal. We affirm.

The issues which we find to be determinative are:

1. Was the tax deed void because of defects in the sale proceedings prior to issuance of the certificates of tax sale, or because of a lack of notice to the property owner in the course of the tax deed proceedings?

2. If the tax deed was void, was the Obergfell quiet title action sufficient to establish title by adverse possession and payment of taxes?

3. Was the exchange of deeds between the plaintiffs and the Steinbessers (present surface owners) effective in validating the Richland County claim to the royalty?

4. Was the claim on the part of the plaintiffs barred by laches extending over a period of approximately 60 years?

The parties raised other issues which are not essential to this opinion and are not discussed.

This cause was presented to the District Court upon an agreed statement of facts with supporting affidavits, exhibits, and answers to interrogatories. The District Court entered an extensive review of the statement of facts, findings of fact, and conclusions of law. We summarize the uncontested facts:

Ernest Stubbs, the father of the plaintiffs, was the patentee on November 1, 1918. Ernest Stubbs left the land in 1919 and never returned. Taxes became delinquent for the

2

years 1921 through 1929. Richland County received a tax deed on August 18, 1930.

On August 7, 1933, Richland County sold the land under contract for deed to Albert Obergfell. On February 3, 1944, Richland County quitclaimed the land to Albert Obergfell, but reserved a 6¼% royalty interest in the oil and gas to be produced. Albert Obergfell conveyed the property to August M. Obergfell (Obergfell) on June 6, 1944. Obergfell brought a quiet title action and obtained a decree on February 27, 1946. The 1946 decree contained the following statement after the property description:

> Subject also to a royalty interest of 6¼%
> of all oil, gas and minerals, recovered
> and saved from the lands above described,
> reserved in Richland County, Montana.

Richland County was not a party defendant in the quiet title action.

In 1970, Obergfell sold to Joe G. Steinbesser and Donald J. Steinbesser, reserving an undivided one-half interest in all of the oil, gas and other minerals, excluding coal.

Oil was discovered in May 1979. In 1983, plaintiffs quitclaimed to Steinbessers all their interest in the land with the exception of the 6¼% royalty claimed by Richland County. In exchange for these four deeds, Steinbessers conveyed to the plaintiffs all of their right, title, and interest in and to the 6¼% royalty claimed by Richland County. Obergfell, who had reserved an undivided one-half interest in the minerals, did not execute any conveyance to the plaintiffs. As a result, the curative effect, if any, of the Steinbessers' deed is limited to their one-half interest in the oil, gas and minerals.

The District Court concluded that an underlying question was whether the plaintiffs could, by their exchange of quitclaim deeds, sever Richland County's 6¼% royalty interest

and redeem only that interest. We conclude that no redemption was attempted. The plaintiffs did not tender tax payment to anyone. The agreed facts established that while the land was in the possession of Richland County, no taxes were assessed. All taxes assessed thereafter were paid by respective landowners, and no real property taxes were delinquent.

The parties asked the District Court to adjudicate who were: (1) the owner of the 6¼% royalty on oil, gas and minerals; and (2) the owner of the produced oil. Our holding will dispose of the first question and eliminate the need for consideration of the second.

The Findings of Fact of the District Court establish that prior to the holding of the tax sales, no affidavit of the County Treasurer establishing publication of notice of tax sale was filed in the office of the Clerk and Recorder of Richland County, as required by § 2187, R.C.M. 1921. The application for tax deed together with supporting documents showed that the owner was Ernest B. Stubbs of Davenport, Arkansas. Notwithstanding that statement of ownership, the affidavit of the Clerk and Recorder showed that the notice of application of tax deed was mailed to Ernest B. Stubbs at Sidney, Montana. The District Court pointed out that the theory of the plaintiff's case was that the tax deed issued to Richland County on August 18, 1930, was void and a nullity; that the true owner had the right of redemption under the statute; and that right of redemption continued until divested by the required notice. Prior to December 30, 1982, Richland County received $491,937.94 in royalty payments from production of oil from the tract, and royalty has accrued since that date.

4

The District Court took judicial notice of the 1946 quiet title action and decree, which held that Obergfell had been in open, notorious, exclusive and adverse possession of the land for a period in excess of 10 years and had claimed the same adversely to all the world. Since the issuance of the tax deed on August 18, 1930, neither the plaintiffs nor their predecessors in interest were in possession of the property or made any claim to the property. Ernest B. Stubbs abandoned the property in 1919 and left Montana. Since 1921 neither the plaintiffs nor their predecessors in interest have paid any taxes or assessments levied against the property, a lapse of over 61 years. Plaintiffs have completely failed to explain the delay in exercising their asserted rights. Prior to the commencement of this lawsuit, no one has questioned the validity of the 6¼% royalty claimed by Richland County.

The District Court adopted conclusions of law that the quiet title action and the deeds from the plaintiffs validated Obergfell's and Steinbessers' title to the minerals and Richland County's right to a share of the mineral royalties. The court concluded that Richland County would suffer detriment if required to refund accumulated revenue; that plaintiffs' predecessor-in-title abandoned the property in 1919; that the plaintiffs did not assert a claim until 1982 when the royalty interest became valuable; and that plaintiffs' claim of redemption is barred by laches. The District Court then concluded that Richland County is entitled to a decree quieting title to its reserved royalty of 6¼% and to the proceeds realized from that royalty interest.

5

Is the tax deed void because of defects in the sale proceedings prior to issuance of the certificates of tax sale, or because of a lack of notice to the property owner in the course of the tax deed proceedings?

Plaintiffs devote an extensive portion of their briefs and argument to the insufficiency of the tax deed proceedings and the right of redemption on the part of the plaintiffs.

Section 2182, R.C.M. 1921 provided for publication of notice of tax sale by the County Treasurer. Section 2187, R.C.M. 1921 required that after making publication, the County Treasurer "must file with the county clerk a copy of the publication, with an affidavit attached thereto." The agreed statement of facts established that no affidavit was filed as required by § 2187, R.C.M. 1921.

Section 2209, R.C.M. 1921, as amended by Chap. 156, 1929 Mont. Laws, provided the following with regard to notice of application for tax deed to the owner:

> The purchaser of property sold for delinquent taxes . . . must . . . serve upon the owner of the property purchased, if known . . . a written notice, stating that said property, or a portion thereof, has been sold for delinquent taxes, giving the date of sale, the amount of property sold, the amount for which it was sold, the amount due, and the time when the right of redemption will expire, . . . and the owner of said property . . . has the right of redemption indefinitely until such notice has been given and the deed applied for, upon the payment of fees, percentages, penalties and costs required by law. Notice to any owner, mortgagee or assignee of mortgagee shall be given by registered letter addressed to such mortgagee or his assignee at the post office address of said owner, mortgagee or assignee . . . In case of unoccupied property, . . . such notice must be posted in a conspicuous place upon the property, and personally served upon all owners thereof residing in the county where the property is situated, and deposited in the post office address to any known or residing outside of said county with postage thereon prepaid . . .

The parties' stipulated statement of facts and the District Court's findings of fact establish that the affidavit of the

Clerk and Recorder of Richland County stated: "[T]he owner is Ernest B. Stubbs of Davenport, Arkansas, and notwithstanding this knowledge, attests to the mailing of notice of application for tax deed to Ernest B. Stubbs at Sidney, Montana."

Notice of application of tax deed to the owner, whether by mail or publication, has been held to be jurisdictional. Tax deeds issued without affidavits setting forth the requisite statements as to notice and occupancy are void. Yellowstone Inv., Etc. v. Yellowstone County (Mont. 1982), 654 P.2d 508, 39 St.Rep. 2111; Mitchell v. Garfield County (1949), 123 Mont. 115, 208 P.2d 497. We conclude that the tax deed here in question was void.

## II

Was the Obergfell quiet title action sufficient to establish title by adverse possession and payment of taxes?

In June 1944, Albert R. Obergfell and his wife conveyed the property to August M. Obergfell. In 1970, August M. Obergfell and his wife entered into a contract for deed with Donald J. and Joe G. Steinbesser, in which the Obergfells reserved an undivided one-half interest in all oil, gas and other minerals not previously conveyed. On June 2, 1983, Joe Steinbesser and others conveyed to the plaintiffs all their right, title and interest in and to the 6¼% royalty claimed by Richland County. The plaintiffs did not obtain a similar conveyance from the Obergfells, who had retained an undivided one-half interest in all oil, gas and other minerals not previously conveyed.

In 1945, August M. Obergfell commenced a quiet title action in Richland County. Service of summons in that action was made upon Ernest B. Stubbs among others by publication. Service by publication was based upon an affidavit reciting

7

that Stubbs did not reside in Montana and that his last known address was R.R. #2, Edna, Kansas. Richland County was not a party defendant in that action. On February 27, 1946, a decree was entered quieting title to the land in Obergfell, with title subject to a royalty interest reserved in Richland County, Montana, of 6¼% of all oil, gas and minerals recovered and saved from the lands.

The plaintiffs contend that the affidavit for publication of summons was inadequate as to Mr. Stubbs because it only stated that he once resided in Montana, but that his last known place of residence was R.R. #2, Edna, Kansas. The plaintiffs contend that these conclusions are not sufficient under Aronow v. Anderson (1940), 110 Mont. 484, 104 P.2d 2, in which this Court stated that the affidavit for publication must show the evidentiary facts upon which the ultimate fact of nonresidence is asserted, before a valid order for publication of summons can be made. In the absence of the complete file of the quiet title action, we do not rule upon this contention of the plaintiffs.

As a result, we are not able to conclude that the Obergfell quiet title action was sufficient by itself to establish title by adverse possession and payment of taxes.

III

Was the exchange of deeds between the plaintiffs and the Steinbessers (present surface owners) effective in validating the Richland County claim to the royalty?

The District Court concluded that while the tax title proceedings were defective, such defects were cured by the quit claim deeds from the plaintiffs to the present owners of the property. The District Court relied upon the analysis of royalty in Rist v. Toole County (1945), 117 Mont. 426, 159

8

P.2d 340, in which this Court stated that royalty means a share of the produce paid to the owner of the property. The originator of the royalty is still the owner of the property while the royalty assignee has an interest in the produce of the property, which is personal property. The Court pointed out that an assignment of royalty does not anywhere constitute a grant of minerals, and no severance from the land is consummated under such an assignment. The Court also pointed out that royalty constitutes an interest in the privilege of producing minerals and is personal property when it is produced. It is not an interest in the minerals in place. In other words, a royalty is a privilege a prendre, not a portion of the fee simple title. Rist, 117 Mont. at 433-34, 159 P.2d at 342-43.

In substance, the District Court concluded that the conveyance by the plaintiffs was sufficient to pass all title to the minerals in place, thereby validating the title to all minerals in the surface owners, and also validated the royalty interest of Richland County. While we do not disagree with the analysis of the nature of royalty, we do not conclude that the exchange of deeds was sufficient to validate the royalty interest of 6¼% claimed by Richland County. In the plaintiffs' deeds to the Steinbessers, there was an express reservation by the plaintiffs of their claim and interest in the 6¼% royalty claimed by Richland County. It is true that the plaintiffs are the heirs of Mr. Stubbs, the original owner. It is also true that their conveyances to the Steinbessers are sufficient to clear the title of any insufficiency of the tax deed proceedings as to Mr. Stubbs. However, the specific exception at 6¼% royalty in the plaintiffs' quit claim deed to the Steinbessers is comparable to any other deed in which a grantor excepts and reserves a

9

royalty interest. As a result, we conclude that the plaintiffs did not convey or give up any claim which they had to the 6¼% royalty claimed by Richland County.

IV

Was the claim on the part of the plaintiffs barred by laches extending over a period of approximately 60 years?

The District Court referred to King v. Rosebud County (Mont. 1981), 631 P.2d 711, 38 St.Rep. 1145, in which this Court concluded that the defense of laches was inapplicable because laches did not commence until oil was produced and royalties were earned. The District Court concluded that this Court had overlooked the inchoate ownership of the royalty interest. We agree that the King v. Rosebud County analysis was incomplete with regard to laches.

In Matter of Estate of Wallace (1980), 186 Mont. 18, 606 P.2d 136, this Court pointed out that there is no absolute rule as to what constitutes laches in Montana and that each case must be determined according to its own peculiar circumstance. The Court emphasized that laches is not a mere matter of elapsed time, but is principally a question of the inequity of permitting a claim to be enforced.

> Laches . . . is a concept of equity; it means negligence in the assertion of a right; it is the practical application of the maxim, "Equity aids only the vigilant;" and it exists when there has been unexplained delay of such duration or character as to render the enforcement of the asserted right inequitable. [Cases cited.]

Wallace, 186 Mont. at 25, 606 P.2d at 140. The Court pointed out that in applying the laches doctrine, the passage of 32 years after issuance of a probate court decree is of such duration as to make a present attack inequitable. The Court also held that where, without reasonable excuse for delay, more than 4 years had passed between the appointment a trustee and the filing of the lawsuit, that factor, combined

10

with an elapsed time of 38 years was sufficient to make it inequitable for the appellant to attempt a legal attack on a distribution in an estate.

In addition in Barrett v. Zenisek (1957), 132 Mont. 229, 315 P.2d 1001, this Court referred to § 49-119, R.C.M. 1947, now § 1-3-218, MCA, which states:    "The law helps the vigilant before those who sleep on their rights." The Court then quoted from O'Hanlon v. Ruby Gulch Min. Co.(1922), 65 Mont. 318, 209 P. 1062, where the Court stated:

> While it is true that the statute of limitations had not run against the claim now asserted by plaintiffs, that fact alone does not determine their rights.  The delay which will bar relief in equity is not necessarily measured by the period prescribed by the statute.  It may be much less, depending upon the peculiar circumstances of the case, and in determining whether laches shall bar a particular claim it is proper to consider whether a party or an important witness has died, and the party against whom the claim is asserted has been deprived thereby of important testimony [Citing case], or whether the property involved has increased in value [Citing case], or whether the property has passed into the hands of an innocent third party [Citing case], or whether the position of the parties is so changed otherwise that an injustice will follow a failure to apply the doctrine [Citing case].

Barrett v. Zenisek, 132 Mont. at 239-40, 315 P.2d at 1007.

Following are significant factors which we consider in determining the issue of laches in this case:

1.  Plaintiffs' predecessor abandoned the property in 1919 and plaintiffs and their predecessor have not claimed the right to physical possession of any part of the land and have not paid any of the taxes assessed against the land.

2.  After a lapse of over 60 years, the property interest claimed has become extremely valuable.

3.  Plaintiffs first learned of their claim after the discovery of oil in February, 1982.

4. Prior to December 30, 1982, Richland County had received approximately $491,000 in royalty payments from the production of oil.

5. Reimbursement of royalties paid would fall upon the taxpayers of Richland County.

6. The principal parties to the tax deed proceedings who could furnish first hand knowledge concerning facts are now deceased, as are the early occupants of the land.

7. Plaintiffs have not shown by testimony or otherwise the reasons for the unexplained delay in claiming their asserted right between the tax deed in 1930 and the filing of the complaint in 1982.

8. None of the successors-in-interest who followed Richland County and its tax deed have questioned the validity of the 6¼% royalty reservation prior to 1982.

9. The plaintiffs have not in fact sought to redeem the property, but have based their claim upon the exchange deeds with the Steinbessers.

The plaintiffs have made extensive arguments with regard to the factor of redemption, pointing out that under § 2209, R.C.M. 1921, an owner of property has the right of redemption indefinitely until the proper notice of application for tax deed has been given. We point out that the plaintiffs did not attempt a redemption. Redemption is covered by §§ 15-18-101 through -108, MCA. In substance, a redemption requires that a redemptioner shall pay all delinquent taxes for which the land was sold, plus interest, and shall also pay the subsequent taxes paid by the purchaser or his assignee at a tax sale, with interest. No tender of monies was made in redemption here. The plaintiffs rely instead upon the agreed facts that there are no delinquent taxes. We

12

conclude that the actions of the plaintiffs do not meet the statutory requirements for a redemption.

Following an analysis of all of the foregoing factors and balancing the equities for the parties, we conclude there has been no reasonable excuse for the delay and that all of the factors considered together clearly make it inequitable to allow the plaintiffs to assert their claim. That conclusion is enhanced by the significant change in value of the royalty interest upon the discovery of oil.

We recognize that no previous Montana cases cited to us have applied the theory of laches in a tax deed case. We point out that such a theory is not inconsistent with the development of the law of real property in the state of Montana. By statutes which have been affirmed by judicial opinions, we have provided that in Montana an owner of real property can lose title on a theory of adverse possession, where another person takes physical possession of the property openly and notoriously and pays the taxes for a term of 5 years at the present, and 10 years under earlier statutes. No further notice has been felt to be necessary.

In the present fact situation, the plaintiffs have allowed other persons to possess the realty itself and to pay taxes for a span in excess of 50 years. It is not unfair to deny plaintiffs recovery under such circumstances. One further factor may be mentioned here, and that is the absence of a claim by an original property owner who desired to actually possess the land itself. This claim has arisen following the production of oil and as a result of a search of the record by third parties, who then contacted the plaintiffs with regard to their potential claim for royalties.

13

We affirm the decree and judgment of the District Court holding that a 6¼% royalty is vested in Richland County.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____

_____
Justices

_____
Honorable M. James Sorte,
District Judge, sitting in place
of Mr. Justice L. C. Gulbrandson