No. 89-129

IN THE SUPREME COURT OF THE STATE OF MONTANA

1989

---

HOLLAND HUNTER, HENRY F. HUNTER,
FLORENCE HUNTER, DEBORAH HUNTER,
ALISON HUNTER KINCADE, MARGARET S.
REYNOLDS, TOM. H. REYNOLDS, and
JAMES H. REYNOLDS,

        Plaintiffs and Appellants,

    -vs-

ROSEBUD COUNTY, a local governmental
entity located in the State of Montana,
et al.,

        Defendants and Respondents.

---

APPEAL FROM:  District Court of the Sixteenth Judicial District,
               In and for the County of Rosebud,
               The Honorable Alfred B. Coate, Judge presiding.

COUNSEL OF RECORD:
    For Appellant:
        Joseph W. Sabol argued, Bozeman, Montana

    For Respondent:
        W. H. Bellingham argued; Moulton, Bellingham, Longo &
        Mather, Billings,   (True Oil Col, USA Petro. Corp.,
        Carlson, Lair, Brown & Tesoro Petro. Corp.)
        Rodd A. Hamman argued; Calton, Hamman, Calton & Wolff,
        Billings, Montana   (Enfield Energy)
        Thomas A. Ask argued; Ask & Pratt, Roundup, Montana
        (Kincheloe, Mysse, Nielsen, Hendrix, Jennaway)
        Robert J. Waller; Veeder, Broeder & Michelotti, Billings,
        Montana   (Petro-Lewis Funds, Petro-Lewis Agency Corp.,
        Petro-Lewis Corp.)
        William E. Berger; Wilkins & Berger, Lewistown, Montana
        (Ferrell, Rydholm)
        Robert L. Johnson, Lewistown, Montana   (Johnson)
        McKinley Anderson, Bozeman, Montana   (Orleman)

Submitted: October 19, 1989
Decided: December 7, 1989

Filed:

_____
Clerk

Justice R. C. McDonough delivered the Opinion of the Court.

This is an appeal from an action instituted to quiet title to the minerals, mineral interest, and mineral estate previously severed from a parcel of real property located in Rosebud County Montana. Plaintiffs (hereinafter Hunters) appeal from an order granting summary judgment in favor of defendants, Boyd Kincheloe, True Oil Company, Petro-Lewis Funds Inc., et al. (hereinafter Kincheloes). We affirm.

The issues on appeal are:

1. Whether there was a merger of the mineral estate and the remaining estate.

2. Whether the Hunters' claims are barred by virtue of the doctrine of laches.

The facts of this case are complicated. On May 22, 1914, the United States issued a patent to the Northern Pacific Railway Company which included the land that is the subject of this cause of action. Northern Pacific owned the land until 1926. On December 17 of that year, it conveyed, by warranty deed, an undivided one-half interest to F.R. Bentley, and to Lena E. Hess and Dorothy A. Hess, an undivided one-quarter interest each. This deed specifically excepted the mineral estate as follows:

> . . . excepting and reserving unto the grantor, its successors and assigns, forever, all minerals of any nature whatsoever, including coal, iron, natural gas and oil upon or in said lands, together with the use of such of the surface as may be necessary for the exploring for and mining or otherwise extracting and carrying away of the same, . . .

Through conveyances the Bentley and Hess interests in the property was acquired by Harry and Hester Hunter on October 14, 1929.

Because taxes for the year 1928 had not been paid, after tax deed proceedings the county treasurer issued to Rosebud County a tax deed to the property. The tax deed was issued on August 15, 1932. At that time Northern Pacific still owned the mineral estate. Therefore, the tax deed only purported a conveyance of real property less the mineral estate. In 1933, the Northern Pacific Railroad quitclaimed its mineral estate "to the owner or owners of the . . . land." Thereafter the plaintiffs succeeded to the interest of Harry and Hester Hunter.

Rosebud County, on December 3, 1945, quitclaimed its interest in the real property to Art Kincheloe. This deed of conveyance reserved unto the county a six and one-quarter percent (6¼%) royalty interest "of all oil, gas and minerals recovered and saved from the lands."

On April 29, 1950, Art Kincheloe filed an action to quiet title to the property. Subsequently a judgment pursuant to the complaint was entered in favor of Kincheloe finding Kincheloe to be the owner in fee simple absolute of all the interest in the lands subject to the county's royalty reservation. Art Kincheloe and his successors have remained in possession and use of the property since the conveyance by Rosebud County in 1945.

On January 2, 1978 drilling for oil and gas was commenced by lessees of Kincheloes, and since that time four oil and gas wells have been drilled. As of 1983, over eight million dollars in revenue had been realized from the wells.

In 1982, the Hunters filed a lawsuit against Rosebud County, the Kincheloes, and several oil lessees, seeking title to the mineral estate which included the oil and gas in the property. The only defendant originally served with summons and complaint was Rosebud County who was served during July of 1983. A judgment was filed on June 8, 1984 in

3

favor of the Hunters and against Rosebud County as to the county's 6¼% royalty interest and such interest is not involved in the present controversy nor was it appealed.

No further action was taken in the case until August of 1985. At that time, the remaining defendants were served. In 1988, the Hunters filed a motion for summary judgment, seeking judgment against the defendants. Subsequently, each of the defendants in this action filed a motion for summary judgment against the Hunters. The court found for the defendants and against the Hunters. This appeal followed.

The trial court ruled that there was a merger of the remaining estate and the mineral estate when the Northern Pacific quit claimed its mineral interest to "the owner or owners of the land." Therefore, when the county conveyed the land to the Kincheloes, it conveyed the entire estate in the land including all interest in the mineral estate.

The Hunters disagree and maintain that once the mineral estate was severed from the remaining interest they could not merge into a unitary estate. According to the Hunters, mineral estates and the remaining estate are of equal dignity and estates of equal dignity can never merge. In order for a merger to occur there must be estates of greater and lesser dignity. Therefore, in order for Rosebud County to have conveyed the mineral estate to the Kincheloes, it would have been necessary to effect a separate conveyance of the mineral estate. Hunters maintain that the conveyance by the county without mentioning the mineral estate, by way of quitclaim, deed did not effectively transfer the mineral estate. In support of this argument, they rely upon a line of Texas cases. See Humphreys-Mexia Company v. Gammon (Texas 1923), 254 S.W. 296; Joyner v. R.H. Dearing and Sons (Texas 1937), 112 S.W. 2d 1109.

4

We disagree with Hunters' argument. Their assertion that the mineral estate and the remaining estate are of equal dignity is not correct. The general rule is that the owner of the mineral estate enjoys the dominant estate and the surface owner of the remaining estate holds the subservient estate. This theory is based upon the realities that accompany mineral exploration and development. Obviously, in order to fully utilize a mineral estate, one usually must have access to the surface. See Lacy, "Conflicting Surface Interests: Shotgun Diplomacy Revisited", 22 Rocky Mtn. Min. L. Inst., 731 (1976). See also, Western Energy Co. v. Genie Land Co. (1981), 195 Mont. 202, 635 P.2d 1297.

When the Northern Pacific conveyed its previously excepted mineral estate to the owner or owners of the subservient remaining estate, and both estates came together in the same owner, the remaining estate was merged into the mineral estate and there is no reason for further existence as separate estates. Therefore an unrestricted grant by one who claims to be the owner of the remaining estate at the time of the Northern Pacific deed after the merger effected by such deed, conveys all estates in such real property. There is no need to specifically describe such individual estates. At this time Rosebud County claimed to be the owner and had as a minimum, color of title to the land and was the record title owner. It follows that the subsequent convey- ance from the county to the Kincheloes transferred the county's entire estate, including the mineral estate except for the royalty reservation previously noted. It was not necessary for the county to make separate and distinct transfers of the two estates. It has long been recognized that a conveyance of property without reference to the mineral estate carries with it all of the grantor's interest in the mineral estate. Voyta v. Clonts (1958), 134 Mont.

5

156, 328 P.2d 655. Based upon this deed, the Kincheloes received at a minimum color of title to the surface and the minerals.

The District Court held that the Hunters were barred under the doctrine of laches from asserting any claim to the land or otherwise contesting the validity of the tax deed, which the Hunters maintain was void. It is argued by the Hunters that they were not required to take any positive steps to protect their interest in the mineral estate until active production began. Once production did begin they actively and promptly moved to protect their right, by filing this action within the five year period of limitation provided by § 70-19-401, MCA. Having met this obligation, they maintain that it cannot now be said that the doctrine of laches applies.

This argument, however, is not valid in light of our holding that a merger occurred between the surface and the mineral estates. Because there was a merger, and the two interests coincided in the Kincheloes, the doctrine of laches, if it applies, will apply to all of the interest in the land including the mineral estate. We must examine the doctrine of laches and apply its tenents to this case in order to determine whether it will bar the Hunters' claims.

We begin our discussion by reviewing the pertinent elements of laches. There is no statutory defense of laches in Montana, it is a creature of equity. Cremer v. Cremer Rodeo Land and Livestock Company (1979), 181 Mont. 87, 592 P.2d 485. In Montana, there is no absolute rule as to what constitutes laches. In each case, it must be determined according to its own particular circumstances. It is not a mere matter of elapsed time, but rather, is principally a question of the inequity of permitting a claim to be

6

enforced. Matter of Estate of Wallace (1980), 186 Mont. 18, 606 P.2d 136.

In two recent cases, this Court has had the opportunity to examine the doctrine of laches and apply it to circumstances similar to the case at bar. See Richardson v. Richland County (1985), 219 Mont. 48, 711 P.2d 777; Anderson v. Richland County (1985), 219 Mont. 60, 711 P.2d 784. In both Richardson and Anderson, this Court itemized significant factors which it considered in determining the issue of laches. We will apply these factors to this case.

1) The length of time which the present owners have used and occupied the land.

> In 1945 Art Kincheloe, the respondents' predecessor in interest, received a quitclaim deed from Rosebud County, conveying the real property involved in this case. Since that time, the Kincheloes have occupied and used the land. They have paid all real property taxes assessed against the property for almost fifty years.

2) The length of time during which the plaintiffs and their predecessors abandoned the property and have not claimed any right to the physical possession of the land and have not paid any taxes assessed against that land.

> In 1932, the Hunters' predecessor in interest and Hunters lost record title to the property due to their failure to pay real property taxes on the land in 1927 and 1928, and since that time neither they nor their successors have attempted to redeem the property by payment of the back taxes. It is clear, therefore, they have had no contact with the land for approximately fifty years.

3) Whether the property interest claimed has become extremely valuable.

> The subject lands have greatly increased in value since the Kincheloes obtained title. Four oil and

7

gas wells have been discovered yielding revenues of over eight million dollars.

4) Whether or not the plaintiffs first learned of their claim after the discovery of oil.

> In response to Requests for Admissions propounded by True Oil Company, the Hunters admitted that they first learned of their possible claims after oil was discovered.

5) Whether reimbursement of royalties will result in undue hardship upon the defendants.

> In this case, the Kincheloes and the oil companies would be responsible for the reimbursement of many thousands of dollars in revenues. In light of the resources put into the drilling and upkeep of the wells over a twelve year period, a reimbursement would work undue and unfair hardship upon the defendants.

6) Whether or not there are principal parties to the tax deed proceedings who could furnish first hand knowledge of the facts surrounding the proceedings.

> At least two of the principal parties to the tax deed proceedings are now deceased. Art Kincheloe, the defendants' predecessor in interest is dead, as is the chairman of the Board of County Commissioners who executed the 1945 deed. In view of the time which has elapsed, it appears unlikely that anyone who was involved with the tax deed proceedings or the delinquencies of the tax payments are still alive.

7) Whether the plaintiffs have demonstrated any reason for the unexplained delay in claiming their asserted rights between the time of the tax deed, quit claim of minerals estate by Northern Pacific, and the filing of the complaint.

> In this case, no testimony of any kind has been introduced either orally or in documentary form to

8

account for such delay. During oral argument, the attorney for the Hunters maintained that they did not do anything to protect their interest between the time of the tax deed until the filing of the complaint because they did not have to act until actual extraction began. However, we note that during this time period of approximately fifty years the Hunters made no effort to remain in contact with the property. As a result of this neglect, they failed to respond to a quiet title action brought by the Kincheloes in 1950, despite the fact that they were named as defendants and were served by publication. This action resulted in a decree quieting title in the name of the Kincheloes in fee simple absolute, which necessarily carries with it all interests in the minerals. It is presumed that a person stays in contact with his property. The fact that the Hunters did not respond to the quiet title action and did not remain in contact with the land for approximately fifty years leads to the conclusion that any claim they may have had comes within the doctrine of laches.

8) Whether the plaintiffs sought to redeem the property and assert their title at any time.

Neither the plaintiffs nor their predecessors in interest have paid any of the real property taxes levied against the property since 1927. None of the foregoing parties have ever sought to redeem the property from the tax sale. This is especially pertinent in view of our holding there was a merger of title. They have not acted in any way which would assert that they were the "owners" at the time the Northern Pacific executed its quit claim deed in 1933, except this belated quiet title action.

It is clear that all of the significant factors which this Court considered in the Richardson and Anderson cases have been answered in favor of the Kincheloes and against the Hunters. Hunters attempt to distinguish the instant case from Richardson and Anderson, by pointing out that this case does not involve royalty interests held by a county.

9

Therefore, unlike those two cases, a ruling in favor of the Hunters will not deprive the county of revenue nor overburden the taxpayer by forcing reimbursement of the royalties. We note, however, that a decision in favor of the Hunters would create a significant hardship upon the Kincheloes and the leaseholders by not only eliminating their interests in the mineral and leasehold estates and all its ramifications and loss of investment, but by also requiring payment of thousands of dollars in royalties. The doctrine of laches was created to avoid such inequitable results. We therefore hold that the Hunters are barred by laches from contesting the validity of the tax deed. Moreover, because we have also held that a merger occurred between the remaining estate and mineral estate, it follows that the Hunters are similarly barred from contesting the Kincheloes title to the mineral estate.

In view of our holding that the doctrine of laches applies to the Hunters it is not necessary to discuss issues relating to adverse possession and res judicata. The District Court in granting judgment for the defendants is affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____

10

_____
                Justices

_____
District Judge Peter L. Rapkoch
sitting for Justice John C.
Sheehy.

11