No.  91-204

IN THE SUPREME COURT OF THE STATE OF MONTANA

1991

EDWARD B. STANFORD, NEAL A. STANFORD,
and BETH STANFORD,

Plaintiffs and Appellants,

-vs-

ROSEBUD COUNTY, MONTANA, a political subdivision,
BOYD KINCHELOE and MAVIS KINCHELOE, his wife,
LEE A. ADAMS, MELVIN A. MURI and CLEMENTINE MURI,
his wife, E.L. GREBE and CAROLINE GREBE, his wife,
DONALD McSWEYN, OIL RESOURCES, INC., RICHARD C. HOEFLE,
ROBERT A. MEEK, EARL M. CRANSTON, SIVERT O. MYSSE, JR.,
et al.,

Defendants, Respondents, and Cross-Appellants.

APPEAL FROM:   District Court of the Sixteenth Judicial District,
In and for the County of Rosebud,
The Honorable Joe L. Hegel, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

James P. Healow argued; Sweeney & Healow, Billings,
Montana
Joseph W. Sabol argued, Bozeman, Montana

For Respondent:

Robert C. Smith argued; John J. Cavan; Cavan, Smith,
Grubbs & Cavan, Billings, Montana

FILED

DEC 16 1991

Filed:  *Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

Submitted: October 31, 1991

Decided: December 16, 1991

Clerk

Justice R. C. McDonough delivered the Opinion of the Court.

This is an appeal from the judgment of the Sixteenth Judicial District, Rosebud County. The parties to the appeal are: the Stanfords (appellants), Earl M. Cranston and Richard C. Hoefle (appellants), and Boyd and Mavis Kincheloe (respondents). The District Court granted summary judgment whereby an oil, gas and other minerals royalty, whose title remains in dispute, was awarded: 88.889 % to the Kincheloes, 5.555% to Hoefle and *5.556%* to Cranston as owners of the subject property's mineral interest in that proportion. For reasons that follow, the judgment of the District Court is reversed.

Several issues are raised by the appellants. However, our review will be limited to the single question of who among the contesting parties is entitled to the remaining royalty interest. Hoefle and Cranston raise "equitable" issues most of which regard Attorney William V. Moore. They claim an interest in Moore's fees upon an unjust enrichment theory and a further interest in a portion of anything the Kincheloes are awarded on a theory of constructive fraud and constructive trust. Attorney Moore is not a party in this action and resolution of the issues surrounding Attorney Moore is not necessary to determining the title of the disputed royalty interest. The constructive fraud and constructive trust claims are mooted by this opinion.

Stanfords allege that Cranston fraudulently induced them into quitclaiming their interest in the property to Cranston. Because the District Court determined Stanfords did not have any interest in the property, it found this issue moot. In light of our

2

decision, the fraud claim must now be addressed by the District Court, and we do not address it here.

This case involves quieting title to a royalty interest previously reserved by Rosebud County. The subject property was originally vested in Northern Pacific Railway Company. Albert Farwell purchased the surface estate and later became owner of the mineral estate when Northern Pacific Railway Company quitclaimed the previously reserved mineral interests. The Stanfords are the only remaining heirs of Albert Farwell.

From **1916** to **1927** taxes assessed on the subject real property each year by Rosebud County went unpaid. In **1927,** Rosebud County applied for and received a tax deed to the subject property. In **1931,** a decree was awarded quieting title in Rosebud County. In **1944,** Rosebud County quitclaimed its interest in the property to Adolph Ziesmer reserving to the county a **6.25%** royalty interest to "all oil, gas and other minerals recovered and saved from the said lands". In **1945,** Ziesmer quieted title to the property, acknowledging and describing the property as subject to Rosebud County's reservation of the **6.25%** royalty.

Ziesmer conveyed his interest to Jud and Ruby Smith who in turn conveyed their interest, with the exception of **25%** of the mineral interest, to the Kincheloes. The Kincheloes have resided on the property since **1950.** Smith later conveyed portions of his mineral interest to other persons, including Hoefle who conveyed one half of his share to Cranston.

In **1974,** Cranston and Hoefle obtained oil and gas leases from

the Xincheloes and Smith's assigns as lessors to Oil Resources Inc. (Cranston's and Hoefle's company) as lessee. Portions of the working interest of Oil Resources lease were assigned to Polumbus Petroleum who obtained production. Polumbus attempted to determine who was entitled to the revenues of the oil it produced and found that questions existed regarding the validity of the county's tax title and the efficacy of Rosebud County's **6.25%** royalty reservation. Polumbus initiated an interpleader action in U.S. District Court in Billings naming all possible mineral and royalty owners as defendants. All revenues attributable to the royalty interest were ordered and remain with the clerk of court.

Several stipulations were entered that resulted in the dismissal of many of the defendants and the loss of diversity jurisdiction. Meanwhile, the Stanfords filed a complaint in Rosebud County alleging the underlying tax deed to the property was void and the Stanfords as heirs to Albert Farwell are the owners of the entire mineral estate and royalties, and that they were fraudulently induced into quitclaiming their interest to Hoefle and Cranston.

The removed interpleader action and the Stanfords' case were consolidated with the former action being dismissed. The remaining parties in the action were Rosebud County, the Stanfords, the Kincheloes, Hoefle and Cranston. The District Court approved and adopted a settlement agreement, entered by these remaining parties, dismissing Rosebud County from the case and awarding the county **1/2** or **3.125%** of the disputed royalty and 9/16ths of royalties already

paid into the court. Rosebud County waived, relinquished, and released all right, title and interest in what remains of the royalty.

Under the terms of the settlement agreement, "all right, title and interest in and to the remaining 3.125% royalty...shall be owned by Kincheloe, Hoefle, Cranston, and/or Stanfords.. .". The agreement further states that the royalty shall be owned by the parties "in such proportion and in accordance with their respective interests, if any, as they may be entitled to under the terms of any settlement agreement entered into by them or judgment of the Court.. . that shall determine their respective rights thereto." The remaining claimants each entered a motion for summary judgment alleging a legally valid claim to the remaining shares of the proceeds of production and the remaining royalty. The District Court ruled in favor of the Kincheloes.

The Kincheloes claim entitlement to a proportion of the royalty based on their ownership of 100% of the surface rights and 75% of the mineral rights. Kincheloes' title in the surface and minerals as well as their claim to the royalty interest is based upon the tax deed and subsequent quiet title actions which Kincheloes argued, and the District Court found, to be valid. Alternatively, Kincheloes argue that title in the royalty interest is independently established by adverse possession.

The Stanfords claim entitlement to all of the proceeds of the royalty as the sole heirs of Albert Farwell. Stanfords argue that the tax title proceedings are void and that as heirs to the pre-tax

5

deed title owner, they assert the only valid claim to the royalty interest.

Cranston and Hoefle claim entitlement to all of the proceeds of the royalty based upon Cranston's quitclaim deeds from Stanfords and upon the same grounds as Stanfords. Because we do not address the fraud claim, our analysis involves only Xincheloes' and Stanfords' claims.

We have held that in order to quiet title to any property interest, a party must first establish a prima facie claim to title. LeVasseur v. Roullman (1933), 93 Mont. 552, 20 P.2d 250. It is axiomatic that a party must prevail on the strength of his own title and not on the weakness of others. Funk v. Robbin, (1984), 212 Mont. 437, 689 P.2d 1215. As such, our analysis is reduced to a question of whether the parties are able to establish prima facie title to the royalty. Our determination is a question of law and as such this Court's review will be plenary. Steer, Inc. v. Department of Revenue (1990), 245 Mont. 470, 803 P.2d 601.

The Stanfords' claim of title to the disputed royalty is through the pre-tax deed owner, Albert Farwell. Stanfords contend that Rosebud County failed to follow proper procedure thus rendering the tax sale and Rosebud County's subsequent quiet title action defective and void. It is Stanfords' position that while the tax deed is void, the creation of the royalty interest was confirmed by the August 25, 1989 settlement agreement. Because the tax deed is invalid, Stanfords contend the royalty reverts to the pre-tax sale claimants. The Stanfords assert that as the

undisputed heirs to Farwell, who died in **1929,** they are entitled to the royalty.

Stanfords maintain the specific jurisdictional defects in the tax deed and tax sale proceedings were:

(a) That no affidavit of proof of service of notice for application for tax deed was filed in the office of the Treasurer of Rosebud County, Montana, prior to the issuance of the tax deed as required by statute;

(b) That the affidavit of J.L. Freshour, Deputy County Clerk and Recorder, dated September 16, **1927,** is defective and deficient and therefore null and void;

(c) That the notice of application for tax deed dated August 15, **1927,** indicates on its face, "That the period within the said above described lands and premises may be redeemed for the sale to pay the taxes for the year **1916** has long since expired, . . ."

(d) That no affidavit of notice of publication of tax sale was filed in the office of the Clerk and Recorder of Rosebud County, Montana, by the County Treasurer as required by statute.

The District Court ruled that the **1927** tax deed proceeding adequately complied with the statutory notice provisions, the County Treasurer had jurisdiction to issue the tax deed to the County and that the tax deed was and is valid. We disagree. We find the tax title proceedings to be deficient as asserted by Stanfords above.

"Proceedings on tax sales are in invitum. Every essential or material step prescribed by the statute must be strictly followed." King v. Rosebud County **(1981),** 38 St.Rep. **1145, 631** P.2d **711.** Section **2209,** RCM **(1921),** provides explicit instructions that an 'affidavit of notice of an application for a tax deed' must be filed with the clerk and recorder of the county in which the

7

property is situated. There is no record of such an affidavit being filed. Furthermore, § 2201, RCM (1921), states that redemption may be made any time prior to giving the notice of and application for a tax deed. The notice of application for tax deed in the instant case erroneously states that the right to redemption has "long since expired." Finally, the record fails to include an 'affidavit of notice of tax sale' which, pursuant to § 2212, RCM (1921), must also be filed in the office of the treasurer of the county. The above evidence makes clear that Rosebud County failed to follow the statutes as required; therefore, the tax deed proceeding was deficient and the county treasurer did not have jurisdiction to issue the tax deed and the issued tax deed was void.

Furthermore, service was not properly achieved upon Albert Farwell in the 1931 quiet title action. Specifically, there is a failure to establish the necessary level of proof required in an affidavit for publication of summons. The applicable statute governing the level of proof necessary is § 9484, RCM (1921), which provides:

> The affidavit . . . shall clearly show that the necessary facts exist, and that the plaintiff has used due diligence in all respects as to which due diligence is required . . . The facts constituting due diligence shall be set out in said affidavit. (Emphasis added.)

When construing § 1984, RCM (1921), in Aronow v. Anderson (1940), 110 Mont. 484, 104 P.2d 104, the Court said:

> The affidavit must show the evidentiary facts upon which the ultimate fact is asserted that the defendant resides out of the state before a valid order for publication of summons can be made.

8

The affidavit for publication of summons in the instant case is deficient because it fails to recite facts to support its conclusion that Farwell resided in Minnesota. Furthermore, no specific facts were offered describing a search for Farwell. We find the Affidavit for Publication of Summons to have been deficient and the **1931** quiet title action is void. Furthermore, the **1944** Ziesmer quiet title action is void on the same basis.

We have held that reservations created by counties following defective tax sales remain intact. Richardson v. Richland County **(1985), 219** Mont. **48, 711** P.2d **777.** Here the royalty interest was held by Rosebud County until it relinquished and waived all rights to it under the settlement agreement. When Rosebud County relinquished its interest in this case, the heirs of the pre-tax sale owner, Albert Farwell, are able to assert their title because they and their predecessor have not been deprived of their title. All actions taken relative to the invalid tax sale are void. King v. Rosebud County **(1981),** 38 St.Rep. **1145, 631** P.2d **711.** The Stanfords, as heirs to Farwell, have established a prima facie claim to the royalty on this basis. Because Stanfords have established a prima facie claim, the burden shifts to Kincheloes to prove a superior title. Cook v. Rigney **(1942),** 113 Mont. **198,** 126 P.2d 325.

The Kincheloes contend that the royalty interest can only be derived from mineral interests of which Kincheloes undisputedly own **75%.** Kincheloes advance a theory that inasmuch as only mineral owners have the right to produce or contract for production, they

**9**

must own some or all of the oil in place. Allegedly, the total value of production belongs to the lessee subject to the terms of the lease agreement which obligates the lessee to pay lessors and/or royalty owners. Kincheloes contend that when the county abandoned its claim, the obligation for the lessee to pay that part of the royalty was eliminated. In other words, the mineral owners, by investing in and being in control of production, are entitled to all royalties with the exception of those burdened by the lease.

Kincheloes' argument essentially promotes a theory that the royalty interest should revert to the owners of the mineral interest. Kincheloes, as well as the District Court, cite Stokes v. Tutvet (1958), 134 Mont. 250, 328 P.2d **1096,** to support the position that royalty interests are interests in production which may only be created by the mineral owner and therefore, since Rosebud County abandoned its claim, only the remaining mineral interest holders have a right to the royalty. We note that while the argument has a logical appeal, it does not appear to be supported by Stokes one way or the other and no other authority is provided.

We have previously stated it is important to recognize the distinction between mineral interests and royalty interests. McSweyn v. Musselshell County (1981), **38** St.Rep. **1260, 632** P.2d 1095. Mineral interests are the right to develop or lease and to keep the proceeds of the lease, whereas royalties are a right to a share in production while remaining free from the costs of production. Problematic with Kincheloes' theory is that it blurs

the distinction between the two. If royalty interests are free from the cost of production by definition, then it would be inherently contradictory to find they can arise from spending time and money on production. We decline to find prima facie evidence of Kincheloes' title in the royalty interest on the basis of their right and title in the minerals.

The second basis on which the District Court determined that Kincheloes have title to the royalty is by the doctrine of adverse possession. There is no dispute that the Kincheloes have valid title to 100% of the surface and 75% of the minerals. We affirm the court's finding that the Kincheloes have fulfilled the elements necessary to establish adverse possession of these portions of the property. However, we find that Kincheloes do not have an interest in the royalty interest by adverse possession.

The Kincheloes assert title by adverse possession to the royalty interest both under color of title and by use and occupancy. Color of title is derived through the invalid tax deed and subsequent conveyances. The decree allegedly quieting title to Ziesmer specifically recognizes that Kincheloes' title is subject to Rosebud County's 6.25% royalty interest. Kincheloes are successors in interest to Ziesmer. A purchaser has constructive notice of every matter that appears in the title and is bound to these matters. Pluhar v. Guderjahn (1958), 134 Mont. **46**, 328 P.2d 129.

A person cannot attack a royalty reservation in a title under and through which he bases his rights. Russell v. Texas Company

11

(1956), 238 F.2d 636. In <u>Russell,</u> the court held that a grantee, or his successors in interest, needs an independent source of title to challenge a mineral reservation of his grantor. Kincheloes (the grantees) are estopped by Rosebud County's deed to Ziesmer, through which they derived their title or at a minimum their color of title, from attacking Rosebud County's (the grantor) royalty reservation. Because the Kincheloes' grant expressly subjects the property to the county's reservation, they have no color of title to the royalty.

Kincheloes next contend they establish adverse possession by use and occupancy without need to rely on color of title. Under the adverse possession doctrine, property must be claimed under a color of title or by possession which is actual, visible, exclusive, hostile and continuous for the statutory period. Burlingame v. Marjerrison (1983), 204 Mont. 464, 665 P.2d 1136.

It is unnecessary to determine whether the royalty in this case is a possessory or non-possessory interest; under either, adverse possession will not apply. Kincheloes have failed to produce evidence that they have in fact possessed or taken the royalty. The Kincheloes have never possessed or taken any of the proceeds from the royalty which continues to be held by the clerk of court, nor, prior to these proceedings, did they ever make an adverse claim to the royalty.

We conclude the Kincheloes did not adversely possess or take title to the royalty beginning either under color of title or by actual taking, use or occupancy. No further basis for the

12

establishment of prima facie title is offered. Instead, the remainder of Kincheloes' argument is based upon the defense of laches. Kincheloes have failed to demonstrate any claim to title whatsoever. Because Kincheloes are unable to establish any claim to title in their own right, we conclude Kincheloes have no standing to assert any defenses, including laches.

By virtue of having made a prima facie claim to title, we conclude that the Stanfords are entitled to all rights and interest in the royalty, subject to the findings of the District Court on the issue of fraud. Our conclusion should be construed **as** unique to the unusual circumstances the instant case presents. We by no means intend to stray from our holdings in the line of cases supporting the position that laches is a bar to pre-tax deed title owners. See Richardson v. Richland County, (1985), 219 Mont. 48, 711 P.2d 777; Anderson v. Richland (1985) 219 Mont. 60, 711 P.2d 784; Hunter **v.** Rosebud County (1989), 240 Mont. 194, 783 P.2d 927. Here, Kincheloes lack standing to assert the defense that laches should apply to the plaintiffs' claim to the royalty interest.

Laches is a question of the inequity that would result if a claim were permitted to be enforced. Filler v. Richland County (1991), 247 Mont. 285, 806 P.2d 537. Kincheloes are not in a position to be harmed by an inequitable result because they have always held their property subject to the royalty. No inequity will arise by the enforcement of Stanfords' claim. Because Kincheloes lack a valid claim to the royalty, and therefore lack standing to raise an equitable defense, and because Stanfords are

able to make out a prima facie claim to title, the decision of the District Court is reversed.

We Concur:

_____
Chief Justice

_____

_____

_____

_____
Justices

_____
Justice

December 16, 1991

CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:

James P. Healow
SWEENEY & HEALOW
1250 15th St. West, Suite 202
Billings, MT 59102

JOSEPH W. SABOL
Attorney at Law
225 Esat Mendenhall
Bozeman, MT 59715

John J. Cavan and Robert Smith
CAVAN, SMITH, GRUBBS & CAVAN
P.O. Box 1297
Billings, MT 59103

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY:_____
    Deputy